RECEIVED

APR 1 7 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## Northern District of Illinois
## Eastern Division

Oluwashina Kazeem Ahmed-Al-Khalifa (A070530620) (Pro-se)
Petitioner

Vs                                    **Jury Trial Demanded**

-Joseph Michael Kalady, Attorney At Law, Chicago Illinois
-Steven David Pick, Esq, Federick F. Cohn Ltd, Chicago Illinois
-Kayode Idris, Law Office of Pomper & Goodman, Chicago Illinois
-Richard H. Parson & Jonathan E. Hawley, Federal Public Defendar
-United States Secret Service
-United States Diplomatic Service
-United States Marshal
-United States Immigration and Naturalization Services
-Chicago Police Department, City of Chicago, Chicago Illinois
-Metropolitan Correction Center, Chicago Illinois
-Todd McKechnie, Probation Officer, Chicago Illinois
-Dupage County Jail, Wheaton, Illinois
-Tri County Detention Center, Ullin Illinois
-Patrick J. Fitzgerald, United States Attorney
-Thomas P. Walsh, Assistant United States Attorney, Chief, Civil Division
-Sheila Entenman, Assistant United States Attorney
-Minister of Citizenship and Immigration, Canada
-Nigeria High Commission, Washington D.C.
-Nigeria Immigration Service, Lagos Nigeria.
(Defendants)

13cv2884

Judge Virginia M. Kendall

Magistrate Geraldine Soat Brown

## Complaints

No one shall be subjected to arbitrary arrest, detention or exile. *[Citting Article 9 of the Universal Declartion of Human Rights]*.

Recognizing that it is necessary and timely to affirm in international law, through this Covention, the principle that there is no period of limitation for war crimes and crimes against humanity, and to secure its universal application. ***[Citting Convention on the Non-Applicability of Statutory Limitation to War Crimes and Crimes Agains Humanity]***.

1

# Issues

## The First Issue : Ineffective Assistance of Counsel

**Argument :** The Ineffective Assistace of the above listed Law Firms Led to my Persecution and Fast Track Deportation from the United States to Canada and from Canada to Nigeria. Which constitute sever violation of basic human rights, and violates the U.S.Constitution, Law of Nations and Treatys of the United States.

## Treaties

1. Convention and Protocol Relating To The Status of Refugees.
2. Convention Relating To The Status of Stateless Persons.
3. Convention on the Elimination of All Forms of Discrimination Against Women.
4. International Convention on the Elimination of All Forms of Racial Discrimination.
5. Convention on the Rights of the Child.
6. United Nations Convention Against Torture.
7. United Nations Declaration on the Rights of Indigenous People.
8. International Labor Organisation Convention of 1948.
9. Vienna Declaration and Programme of Action.
10. Vienna Convention on Consular Relation.
11. International Convention for the Suppression of the Financing of Terrorism.
12. Convention on the Prevention and Punishment of the Crime of Genocide.
13. Protocol To Prevent, Suppress And Punish Trafficking In Persons, Especially Women And Children.
14. Protocol Against The Smuggling Of Migrants By Land, Sea And Air.
15. United Nations Convention Against Transnational Organized Crime.
16. United Nation Convention Against Corruption.
17. Inter-American Convention Against Corruption
18. Convention on the Fight Against Corruption Involving Officials of the European Communities or Officials of Member States of the European Union.
19. Covention on Combating Bribery of Foreign Public Officials in International Business Transaction.
20. Criminal Law Convention on Corruption.
21. Civil Law Convention on Corruption.

22. African Union Convention on Preventing and Combating Corruption.
23. International Aviation Laws.
24. Convention on the Non-Applicability of Statutory Limitation to War Crimes and Crimes Against Humanity.

# Fundamental Rights

1. Universal Declaration of Human Rights.
2. International Covenant on Civil and Political Rights.
3. International Covenant on Economic, Social and Cultural Rights.
4. American Convention on Human Rights "Pact of San Jose ,Costa Rica".
5. The U.S. Constitution.
6. Declaration on Race and Racial Prejudice.
7. Declaration of Independence, 1776.
8. Convention Against Discrimination in Education.
9. United Nation Declaration on Human Rights Education and Trainning.
10. Declaration of the Rights of Man and the Citizen.
11. Universal Rights of Personhood.
12. Natural law theories have, however, exercised a profound influence on the development of English common law, and have featured greatly in the philosophies of Thomas Aquinas, Francisco Suárez, Richard Hooker, Thomas Hobbes, Hugo Grotius, Samuel von Pufendorf, John Locke, Francis Hutcheson, Jean Jacques Burlamaqui, and Emmerich de Vattel. Because of the intersection between natural law and natural rights, it has been cited as a component in the United States Declaration of Independence and the Constitution of the United States, as well as in the Declaration of the Rights of Man and of the Citizen. Declarationism states that the founding of the United States is based on Natural law.
13. Declaration of the Rights of Women, 1791
14. Declaration of Rights of the Women of the United States July 4, 1876.
15. Protocol to the African Charter on Human and Peoples' Rights on the Rights of Women in Africa – Maputo Protocol.

# Other Treaties and Fundamental Rights.

1. Council Directives 2004/83/EC of 29 April 2009.
2. European Convention on Human Rights *(ECHR) (formally the Convention for the Protection of Human Rights and Fundamental Freedoms).*
3. Charter of Fundamental Rights of The European Union.

4. Canadian Charter of Rights and Freedoms.
5. African Charter on Human and Peoples' Rights.
6. Human Rights Act 1998.
7. Arab Charter on Human Right.
8. 1689 Bill of Rights.
9. Race Relation Act of 1968.
10. Racketeer Influenced and Corrupt Organizations (RICO).

# Jurisdiction

Jurisdiction is proper pursuant to Article III of the U.S.Constitution.

Jurisdiction is proper pursuant to The Alien Tort Statue(28 U.S.C # 1350, ATS, also called the Alien Tort Claim Act(ACTA)) is a Section of the United States Code that reads. "The District Court shall have original jurisdiction in any civil action by an alien for a tort only, committed in violation of the Law of Nations or a treaty of the United States." This Statue is notable for allowing U.S. Courts to hear human-rights cases brought by foreign citizen for conducts committed outside the United States.

Jurisdiction is proper pursuant to Article 16 of the Convention and Protocol Relating To The Status of Refugees.

Jurisdiction is proper pursuant to Article 16 of the Convention Relating To The Status of Stateless Persons.

## _Authority of Customary International Law_

United States courts may not ignore the precepts of customary international law See e.g., *Charming Betsy, 6 U.S. at 118; The Paquete Habana, 175 U.S. 677, 694-700, 20 S. Ct. 290, 297-300, 44 L. Ed. 320, 326-29 (1900); The Nereide, 13 U.S. (9 Cranch) 388, 423, 3 L. Ed. 769, 780 (1815); Filartiga, 630 F.2d at 881; Mojica, 970 F. Supp. at 146-52; Maria, 68 F. Supp. 2d at 233-35.* This concept has been most clearly embodied in admiralty cases, where domestic law may directly clash with customary international [*598] law. The Supreme Court has long recognized the principle that in admiralty United States courts are "bound by the law of nations, which is part of the law of the land." *The Neriede, 13 U.S. at 423 (1815).* See also *The Paquete Habana, 175 U.S. at 700* (federal courts are to apply the law of nations as federal law). In general, customary international law has the same

status as domestic legislation. Restatement (Third) of Foreign Relations Law § 701 cmt. e ("The United States is bound by the international customary law of human rights."); cf. *Kadic v. Karadzic, 70 F.3d 232 (2d Cir. 1995)* (finding violation of customary international human rights law in war atrocities in Bosnia conflict).

## *Policy Reasons for Honoring International Human Rights Obligations*

This nation's credibility would be weakened by non-compliance with treaty obligations or with international norms.

The United States seeks to impose international law norms-including, notably, those on terrorism-upon other nations. It would seem strange, then, if the government would seek to avoid enforcement of such norms within its own borders. A former Chief Judge of the court of appeals in this circuit recognized this concern. Comparing current judicial unease with human rights treaties to post-revolutionary unease with the Supremacy Clause, he stated:

There are international supremacy clauses which have civil consequences and criminal consequences that we today are currently not comfortable with....Once this country says there is a U.N. Charter, there are treaties there are treaties, and we subscribe to them, in effect, havin something of an international supremacy clause, then there are going to be civil and perhaps criminal consequences that we might not all think are so wonderful. But you can simply say that we're going **[\*\*40]** to have treaties for the rest of them but, of course, they won't apply to us.

Statement of Jon O. Newman, 170 F.R.D. 201, 317 -18 (1996) (Judicial Conference of the Second Circuit). " A central goal of U.S. foreign policy has been the promotion of respect for human rights.....The United States understands that the existence of human rights helps secure the peace, deter aggression, promote the rule of law, combat crime and corruption, strengthen democracies, and prevent humanitarian crises." U.S. Dept. Of State, Human Rights.

## Statement of the Case

A) Counsel, **H. Glenn Fogle Jr.,** failed to file an appeal with the Board of Immigration Appeal (BIA) after receiving $110 filing fee and his service charge to execute same. I submit that the acts by Mr. H. Glenn Fogle Jr. Constitute Ineffective Assistance of Counsel.

B) I was introduced to a Chicago lawyer, **Joseph Michael Kalady**, by Cherubim & Seraphim Church in Decatur, Georgia, the church where I perform my voluntary service on Sundays as a Sound Engineer. Mr. Kalady promised to assist me in applying for a US citizenship through an on-going program with the Secretary of Agriculture. He charged $5,000.00 for his services of which I payed part as deposit at his Chicago's office. It was then agreed that full payment will be made after the granting of my application by the Secretary of Agiculture.

Couple of months after, I received a call from an individual who claimed to be Mr. Kalady's secretary. I was informed that all my documents are ready for the issuance of my US passport and that I should come down to Chicago to meet Mr. Kalady for the necessary processing. I travelled to Chicago few weeks after where I was picked up at the Airport by a man who introduced himself as Mr. Kalady's driver. I later met with Mr. Kalady at his office who provided me with an original birth certificate and a social security card after which he instructed his driver to drive me down to the post office where, he told me, I will apply for my US passport using the documents (birth certificate and social security card) he gave to me.

I was stopped in the car on my way to the post office and arrested, along with the driver, by the United States Secret Service, United States Diplomatic Service and the Chicago Police. I was charged with Production of a False Identification and False Representation of a US Citizen, **but I was not charged with deportation.** For some reasons , Mr. Kalady's driver was not charged. But it turns out to be a sting operation organized by government. Kalady was arrested and released from custody only to find out he was involved in a murder plot. I believed that was why I was not allowed the conclusive of my case before being placed on Fast Track Deportation. I submit that the acts by Joseph Michael Kalady Constitute Ineffective Assistance of Counsel.

 C) On my appearance at Court, I pointed out to the District Court's judge that I was never aware that Mr. Kalady was a fraudulent lawyer after which the judge then gave my representative, **Steven D. Pick**, and myself five minutes to go and discuss this very issue raised by me and then decide on the option of a trial or plea bargain agreement.

**Mr. Pick** advised me not to go ahead with the trial, he told me that a plea bargain is the best option for me even at my insistence that I never knew that I was being set-up by Mr. Kalady and the government officials. I informed Counsel of

unethical conducts by Officials which I believe violates my rights such as not been informed of my **Miranda rights.**

Mr. Pick was not present at my pre-sentencing interview conducted by Probation Officer Todd McKechnie and he advised me against challenging my various concerns in the pre-sentencing investigation report after copy of it was made available to me. Mr. Pick also failed to inform me that my plea will lead to my deportation, but rather told me that I would be freed at the completion of my (0-6 months) sentencing.

Mr. Pick failed to advise me about my rights to appeal my conviction and sentencing. However, I appealed my conviction Pro Se and counsel was advised by the court to withdraw his representation. I hereby submit that all the aforementioned acts by Counsel constitute Ineffective Assistance of Counsel.

On the completion of my 5-month sentence, I was handed over to the USINS for deportation and consequently held at the Tri-County Detention Center in Illinois.

D) At Tri-County, I filed petition for Habeas Corpus case no 02-cv-02713 and a Writ of Mandamus with the US District Court Northern District of Illinois. I was represented by **Pomper & Goodman** in my aforementioned Writ of Manadamus case no 02-cv-02768. I did not know the final outcome of my case. I submit that the act of by Kayode Idris of Pomper & Goodman Constitute Ineffective Assistance of Counsel.

F) And in another petition, appealed to my criminal conviction and sentencing was pending with the Court of Appeals for the Seventh Circuit of which I was represented by **Richard H. Parsons**, Attorney At Law case no 02-1068. And while all the above cases were pending, I was deported by the USINS, shackled all the way inside a chartered plane to Canada and then to Nigeria. However, Court record indicated the (Ahmed-Al-Khalifa vs Court of Appeals for the 7th Circuit case no. 13-cv-586). " To clarify, Plaintiff lawyer on appeal filed a motion to withdrawn under Anders v. Califonia, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967), because counse could not discern a non-frovolous argument to purse of appeal. The Sevent Circuit agreed. See United States V. Ayilla, 50 Fed. Appx. 309, 2002 WL 31430202 ( 7th Cir. Oct 25, 2002).

I believe I have the right to known if counsel was going to withdrawn my appeal. Thus when the decision was made I was forcefully deported from the United States. My appeal was based on ineffective assistance of counsel by Steven D. Pick

my previous lawyer. I see no reason why Richard H. Parson & Jonathan E. Hawley should withdrawn my appeal in my absent. Which I believe Constitute Ineffective Assistance of Counsel and contrary to Article 9 of the Council Directives 2004/83/EC of 29 April 2004.

## Ineffective Assistance of Counsel Claim

Petitioner (pro-se) ineffectice assistance of counsel claim test on the Fifth Amendment not any INA provision. Thus "Constitutional claim does not implicate the INA and could not possibly involve review of the INS's exercise of its discretionary power". (Citting Andrea Szilagyi V INS No. 96-556-15. LEXIS 33654(9th Cir. Nov. 21, 1997). See also Wang V Reno 81F, 3d 808, 815(9th Cir. 1996).

Ineffective assistance of counsel claim in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his/her case. **Ortiz V. INS 179 F.3d 1148 (9th Cir. 1999) (quoting Lopez V. INS, 775 F2d 1015, 1017(9th Cir. 1985).**

A defendant is entitled to conscientious services of competent counsel at the time of entering plea and mere perfunctory representation of assigned counsel is not enough. U.S. V. Tribote, C.A.N.Y 1961, 297 F.2d 598.

## The Second Issue : Persecution.

## Argument

I was denied an access to Courts, rights to a fair hearing and appeal by the U.S. Department of Justice Officials and others which constitute sever violation of basic human rights, Law of Nations and Treatys of the United States. The Persecution Led to my Fast Track Deportation of which did not allowed me the conclusive of my case before being deported. (See Article 7 of the African Charter on Human and Peoples' Rights, Article 47 of the Charter of Fundamental Rights of the European Union, 5th Amendment to the U.S.Constitution, Article 6 of the European Convention on Human Rights, Article 10 of the Universal Declaration of Human Rights).

# **Statement of the Case**

A) I believe I was persecuted by Patrick J. Fitzgerald, Thomas P. Walsh, & Sheila Entenma of the United States Department of Justice. Documents shows that my case was assinged to them in letters dated April 17, 2002 & April 18, 2002 in case nos 02-cv-2713 and 02-cv-2768, (N. D. Ill.) of which I never have my day in Court. Which I believe violaties Article 9 of the Council Directive 2004/83/EC of 29 April 2004 & other international human rights laws.

B) When I was arrested by the three agents (3) namely : United States Secret Service, United States Diplomatic Service & Chicago Police Department I was not informed of my **Miranda rights, and the rights to Counsel.** I aslo believe that one of the three (3) mentioned above is still holding on to my properties. I believe some of my properties was returned to Steven D. Pick but not everything. This include my bank card, drivers licence, cash and some other personal items.

C) From the time of my arrest and sentencing I was held at M C C Chicago. Couple of  months later, I believe I asked Mr. Wilson one of the Officials at M.C.C. if there is any hold on my name. He checked my record and he said there in none. But upon completing my 5 months sentence, I was released to the U.S. INS of which I was suppose to be released to go back home, to Atlanta, Georgia. Thoughtout my stay at M.C.C., I believe I was not advise of my rights under the Vienna Convention on Consular Relation.

D) I also believe I served some time jail time at Dupage County Jail of which I did not committ any crime for me to be held at Dupage. At D.C.J., I was not advise my rights under the Vienna Convention on Consular Relation, and  I was not advise the rights to Counsel.

E) I believe Probation  Officer Todd McKechnie recomended me for Deportation, Probation and Supervise release. The procedure in which my interview was conducted was wrong. I was not allowed to present any evidence to support my probation interview. Counsel was not present at the interview and in my criminal case, I was not charged with deportation. Upon my arrival in Nigeria, there was no probation Office to report to.

F) At Tri County Detention Center (T.C.D.C), I was charged for making photocopies of legal papers and postage.  At a point in time, I was denied photocopies at the center of which my legal papers has to be taken to the U.S. INS office in Chicago for copies and postage to be made. Most of the time, it take days

for my legal paper to be returned to me. Sometimes, the U.S. INS will take from to T.C.D.C in Ullin Illinois to Chicago for no reason whatsoever. I believe most of my time is spent at the Chicago Police Department. Courts records from the U.S. District Court Northern District of Georgia (Atlanta) case no 1:02-cv-0051-RLV shows that I was denied my green card on 3 occassions namely : 03/19/2002. 03/21/2002 & 04/15/2002 of which I was to be at the T.C.D.C, so where was me when my mail was brought to the Tri County Detention Center. Thoughout my stay at T.C.D.C., I believe I was not informed of my rights under the Vienna Convention on Consular Relation.

G) Prior to my deportation, I had a meeting, on May 3, 2002, at the Detention Center with **James Medugu**, an Official of the Nigerian High Commission in Washington and F. Ramos, an INS Deportation Officer. I exhibited documents confirming my outstanding matters to James Medugu and asked him not to issue any travel document to the USINS until all my matters with the Courts are fully exhausted. I, in addition, forwarded a letter to the Nigerian High Commission in New York asking same not to issue any travelling document until my case is concluded. But despite all these, the Nigerian High Commission went ahead to issue a travel document for my deportation from the United States. Mr. F. Ramos, on this day noted on a piece of paper that he will give me a custody review of which he failed to comply with. Mr. Ramos also failed to respond to my memorandun on Custody Review sent to him as well as to the District Director of the INS.

H) An INS interview for Adjustment of Status on April 4, 2002 at 10:00 a.m was Schedule for my wife in Atlanta, Georgia. The said interview was never conducted and there was no reason given to her for such action. Neither did I recieve any correspondence from the INS to explain their reasons. Only to find out at the U.S. Consulate in Lagos, Nigeria, in May 2012, that my I-130 petition was not granted. I believe on at a point in time , I was tortured by the U.S. INS officers in Chicago where they banged my head to the wall. I could not remember the exact date but records will show that I was persecutted because I was taken to Chicago City Hospital for treatment. And in another instance, I was forced to make fingerprint by twisting my hand anti-clockwise when I protested that my case is pending in the Court of law, why are you deporting me.

I) The U.S. Marshal served upon me on of notice of hearing schedule for 06/04/02 at 9:00 A.M. in case no 1:02-cv-02713 in front of Judge David H. Coar. It was the same U.S. Marshal that deported me from Chicago on 06/03/2002 to a first County Jail in another States and I believe a sencond County Jail in another States

while all my cases were pending in this Court and other Courts in the United States.

## The Third Issue : Fast Track Deportation

I believe Fast Track Deportation was used against me to effect my deportation from the United States. A system of operation that has been ruled illegal by the United States Supreme Court since June 26, 2001 of which I was in the United States when the decision was made. Therefore I am entitled to a fair hearing before being deported from the United States.

## Fast Track Deportation Ruled Illegal :
U.S. Supreme Court Decision June 26, 2001. ***Immigration and Naturalization Service v. St. Cyr***, 533 U.S. 289 (2001) is a United States Supreme Court case involving habeas corpus relief for deportable aliens.

According to Henry Weinstein of Los Angeles Times : In an important victory for immigrants' rights the U.S.Superme Court ruled Monday that the government may not deport resident immigrants who have been convicted of certain crimes without giving them a court hearing. In the 5-4 decision, which could affect thousands of people, the court rejected the contention of the U.S. Immigration and Naturalization that two 1996 laws stripped federal courts of jurisdiction to consider legal issues by such deportable cases.

## Holding
That the Antiterrorism and Effective Death Penalty act of 1996 (AEDPA) and Illegal Immigration Reform and Immigration Responsibility act of 1996 (IIRIRA) did not deny district courts their jurisdiction under the general habeas corpus statue.

## Decision
In a 5-4 opinion, Justice John Paul Stevens wrote for the majority stating that Congress did not intend to strip the federal district courts of their authority to hear habeas petitions from deportable aliens and that the AEDPA and IIRIRA did not deny § 212(c) relief to aliens who would have been eligible for such relief at the time of their convictions. Stevens reasoned that the Supreme Court should interpret statutes as avoiding constitutional issues, such as abridging the right to habeas corpus. He also argued that there is a presumption that administrative proceedings can be appealed to Article III federal courts.

## Comments

However, before I could exhaust my administrative and judicial remedies in the United States, (See Article 9 of the Council Directives 2004/83/EC of 29 April 2004), l was *shackled* and deported to Canada by Charter flight. And, from Canada to Nigeria l was deported by Charter flight, *shackled,* over twelve hour flight across the Atlantic Ocean. Upon my arrival in Nigeria, in 2002, l was detained at Alagbon Prison, Ikoyi Lagos and released couple of days later. My deportation to Nigeria through Canada is a third Country deportation which is in violation of International Humanitarian Laws. The Charter flight is also a serious violation of human and fundamental rights. (See Article 4, Protocol No. 4 to the Convention for the Protection of Human Rights and Fundamental Freedoms; Article 19 of the Charter of Fundamental Rights of the European Union; Article 12 of African Charter on Human and Peoples' Rights all which prohibit collective exclusion of Aliens). I arrived Nigeria empty handed as all my properties were in the United States. I lost all my properties as a result of my deportation.


## The Aftermatch of my Deportation from the United States

After my unlawful deportation of 2002 to Nigeria, I travelled to the United Kingdom on a visiting visa in 2007. I thereafter sought for asylum in Ireland (application no. 69/2321/08) which was not granted. My subsequent application for Subsidiary Protection in the United Kingdom (application no. A1334237) was refused and I was extradited to Ireland, from Ireland,I was deported to Netherlands where I sought Humanitarian Protection (application no. V-2759821316) which was also refused without the rights of appeal afforded me. I was again extradited to Ireland from the Netherlands. I was thereafter deported in a chartered plane to Spain where I was finally deported, also in a chatered plane to Nigeria in 2011.

Please note that I was all the way being moved around the countries of the European Union without a passport or any valid travel documents to justify same. (See article 36 of the Vienna Convention on Consular Relations). I had seen three Emergency Travel Documents (ETD) allegedly issued by the Nigeria Government in my name in the past 9 years, none of which I gave my consent to. However, I note that a particular ETD given to me in Netherlands, upon my demand, by the Irish Officials bears the same number (23440) as the one used in my deportation from the United States in June 2002 contrary to my expectation. Thus, my prison number in Ireland (73356) which I believe suppose to appear on the ETD did not!

Upon my arrival in Nigeria, I also noted that Nigeria had issued another ETD to the Irish government to deport me from Ireland via Spain to Nigeria. In the said ETD in which I saw at the Airport in Nigeria, it is stated within that I was living in Ireland illegally.However, this is not true as I was a Refugee Applicant throughout my stay in Ireland.

In my effort to ascertain the validity of my deportation, I went to the Nigeria Immigration Service located at Alagbon, Ikoyi, Lagos here in Nigeria to request for a copy of the Travel Certificate which was used to effect my deportation to Nigeria in 2011. The attending Immigration Officials refused to provide any assistace but instead threatened me with detention if I fail to leave their premises.

As a result of the ill-treatment which I received from the Nigerian government, I have decided to renounce Nigeria as my country and I'm presently a Stateless person living in Nigeria.

# Why Relief Should Be Granted

**Article 3 of the Convention on the Rights of the Child states :**
(Best interest of the child): The best interest of children must be the primary concern in making decisions that may affect. All adults should do what is best for children. When adults make decisions, they should thinck about how their decisions willl affect children. This particularly applies to budget, policy and law makers.

I had a god daughter Damilola Martins. At the same time, l am a proud donor to "Feed The Children" U.S.A. l am married to a U.S. Citizen Rosetta Johnson Ahmed and my Mother, Alhaja W.A. Ahmed, is also a legal permanent residence. In Tomasa Salcido-Salcido v INS No. 96-70683 United States Court of Appeal for the (9th Cir. March 16, 1998). The Court held that the most important single [hardship] factor may be the separation of alien from family living in the United States. Contreras-Buenfil v INS, 712 F.2d 401, 403, (9th Cir. 1983). Writ Granted. See Article 18, African Charter on Human and Peoples' Rights.

My deportation from the United States deprived me of my right to education as l had gained admission to the Georgia State University prior to my deportation. See Article 26 of the Universal Declaration of Human Rights. I also had families living in the United States.

I am also a Donated to the Dekalk County Fire Department. I had a business registered in Atlanta, Georgia, Sound Station, Inc. Rental of Professional Sound Systems and Accessories. Registered with the Secretary of State, State of Georgia. In Omar Custodio-Cayetano v INS No 96-70899 United States Court of Appeals (9th Cir. March 18, 1998). The Court held that demonstrating an illegal alien's contribution to the community and the United States may be sufficient to show Extreme Hardship in deportation. Writ Granted. My deportation from the United States had led to the lost of all my properties and personal items. See Article 17 of the Universal Declaration of Human Rights.

## Case Laws

### Medical Justice V. Secretary of States for the Home Department 02/07/07.

The High Court rules that the law on removals of asylum seekers to third countries is incompatible with the European Convention on Human Rights.

### INS V. Cardoza-Fonseca, 480 U.S. 421 1987.

The U.S. Supreme Court held that the High Commissioner's analysis of the United Nations is consistent with our own examination of the origin of the Protocol's definition, 23 as well as the conclusions of [480 U.S. 421, 440] many scholars who studied the matter. 24 There is no simply no room in the United Nations' definition for concluding that because an applicant only has a 10% chance of being shot, tortured or otherwise persecuted, that he or she has no "well founded fear" of the event happening.

### Suresh v. Canada (Minister of Citizenship and Immigration), [2002] 1 S.C.R.

The Court ruled that when a refugee establishes a prima facie case that deportation may lead to toture, they are entitled to a higher degree of procedural protection than the Immigration Act stipulated.

## Right to a fair hearing

Yukos Oil V Russia, European Court of Human Rights (ECtHR) 20 September, 2011. The Court's nine-judges panel found that Russia violated three Articles of the ECHR, including the right to a fair trial.

**_The Amistad_**, also known as **_United States v. Libellants and Claimants of the Schooner Amistad_**, 40 U.S. 518 (1841).

In 1840, a federal trial court found that the initial transport of the Africans across the Atlantic (which did not involve *La Amistad*) had been illegal, because the international slave trade had been abolished, and the captives were thus not legally slaves but free. **Given that they were illegally confined, the Africans were entitled to take whatever legal measures necessary to secure their freedom, including the use of force.** Atfer the US Supreme Court affirmed this finding on March 9, 1841, supporters arranged transportation for the Africans back to Africa in 1842- See United States v. Amistad, 40 U.S. 518 (1841).

## Ruling on Torture

In Ahmed & Anor V. R [2011] EWCA CRIM 184 (25 February 2011), the judgement reads: "Torture is wrong". The court of appeal made this simple and it would be hoped obvious statement in the appeal of two men convicted of terrorism and being active members of Al-Qaeda. But, it turns out, the position on torture is not as clear as those three simple words.

## The Rights of the Child

Judge : Child's well-being is a factor in deportation.
Reported By William Glaberson of the New York Times February 12, 2002.
"American officials cannot deport an immigrant because he is a felon unless the first consider the impact on a child he would leave behind in this country". *Citting Don Beharry v. Reno No. 98 CV 5381(JBW). Jan. 22, 2002.*
I refer to my God Daughter & Feed The Children. (*See also Article 3 of the Convention on the rights of the Child*).

## Rights To Appeal

**In Erhard W. Will v. INS, No. 18654,** United States Court of Appeals for the 7th Circuit's decision of Aug. 25,1971: The Court of Appeals , Pell, Circuit Judge, held that so long as direct appeal was pending from alien's conviction of possessing narcotic drug, alien had not been "convicted" with the requisite finality to support deportation, regardless of extremely questionable likelihood that alien would prevail on appeal. Petition granted; deportation order set aside.

# Due Process Clause

It is well established that alien have due process right under 5th Amendment. See Reno V. Flores 507 U.S. 292, 306, 123 L. ED, 2d 113 S. Ct. 1439 (1996); Chi Thon Ngo V. INS, 192 F.3d 390,396 (3rd Cir. 1999).

The Due Process Clause of the Fifth Amendment States that "no person......shall be deprived of life, liberty or property without due process of law" . U.S. Constitution Amendment V.

As its protection extends to all "person" within the border of the United States, it encompasses deportable alien such as the petitioner. See London V. Plasecia, 459 U.S. 21 32-3374 L. Ed 2d 21, 103 S. Ct. 321 (1982); See also United States V. Balsys 524 U.S. 666, 671,141 L.Ed. 2d 575, 118 S. Ct. 2218 (1998) (holding that "resident aliens........are considered "persons" for the purposes of the Fifth Amendment and are entitled to the same protections under the (Self-incrimination) Clause as Citizens". ( Citing Kwong Hai Chew V. Colding, 344 U.S. 590, 596 97 L.Ed- 576, 73 S. Ct. 472 (1953))); Wong Wing V. United States, 163 U.S.228, 238, 41 L.Ed. 140, 16 S. Ct. 977 (1896) (holding that "person within the United States (and) even aliens..........(may not) be deprived of life, liberty or property without due process of law").

The Fifth Amendment also create a procedural due precess right(which extends to alien in deportation or removal proceeding) to be heard at a meaningful time and a meaningful manner, before a deprivation of liberty occurs. **Mathew V Eldrigde, 424 U.S. 319 334(1976); Patel V Zemski No. 01-2398,2001 U.S. App. LEXIS 26907 (9th Cir.Jan.,2002);Zadvydas V Davis, 533 121 S.Ct 2491(2001).**

If a prima facie case of prejudice is shown, the burden shift to INS to show that the alleged due process violation could not have change the outcome of the proceeding. See United States v. Gonzalez-Mendoza 985 F. 2d 1014, 1017(9th Cir. 1993).

# International Statutory Violations

(1)It is submitted that **Ineffective Assistance of Counsel, Persecution, And Fast Track Deportation as applied to me** Constitute An Act of War Crime under 18 U S C subsection 2441. **TITLE 18 CRIMES AND CRIMINAL PROCEDURE PART I. CRIMES CHAPTER 118. WAR CRIMES. § 2441. War crimes**

**(a)** Offense. Whoever, whether inside or outside the United States, commits a war crime, in any of the circumstances described in subsection (b), shall be fined under this title or imprisoned for life or any term of years, or both, and if death results to the victim, shall also be subject to the penalty of death.

**(b)** Circumstances. The circumstances referred to in subsection (a) are that the person committing such war crime or the victim of such war crime is a member of the Armed Forces of the United States or a national of the United States (as defined in section 101 of the Immigration and Nationality Act [8 USCS § 1101]).
**(c)** Definition.

As used in this section the term "war crime" means any conduct—

**(1)** defined as a grave breach in any of the international conventions signed at Geneva 12 August 1949, or any protocol to such convention to which the United States is a party;

**(2)** prohibited by Article 23, 25, 27, or 28 of the Annex to the Hague Convention IV, Respecting the Laws and Customs of War on Land, signed 18 October 1907;

**(3)** which constitutes a grave breach of common Article 3 (as defined in subsection (d)) when committed in the context of and in association with an armed conflict not of an international character; or

The US War Crimes Act (1996), as amended by the Military Commissions Act (2006), which was passed by Congress following the Supreme Court's decision in *Hamdan v. Rumsfeld* in 2006, changed the definition of "war crime" in relation to common Article 3 of the 1949 Geneva Conventions.

## Common Article 3 Violations is described as follows:—

(1) **Prohibited conduct.**— In subsection (c)(3), the term "grave breach of common Article 3" means any conduct (such conduct constituting a grave breach of common Article 3 of the international conventions done at Geneva August 12, 1949), as follows:

(A) **Torture.**— The act of a person who commits, or conspires or attempts to commit, an act specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another

person within his custody or physical control for the purpose of obtaining information or a confession, punishment, intimidation, coercion, or any reason based on discrimination of any kind.

**(B) Cruel or inhuman treatment.— The act of a person who commits, or conspires or attempts to commit, an act intended to inflict severe or serious physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions), including serious physical abuse, upon another within his custody or control.**

Basis for the war crimes listed above

These are violations of customary international law, listed as war crimes in the Statute of the International Criminal Court.

Other serious violations of international humanitarian law committed during a non-international armed conflict are described as follows:

• torture or inhuman treatment, including biological experiments;
• willfully causing great suffering or serious injury to body or health;
• extensive destruction or appropriation of property, not justified by military necessity and carried out unlawfully and wantonly;
**• willfully depriving a prisoner of war or other protected person of the rights of a fair and regular trial;**
**• unlawful deportation or transfer;**
**• unlawful confinement;**
**• slavery and deportation to slave labor;**
**• collective punishments;**
• the practice of apartheid or other inhuman or degrading practices involving outrages on personal dignity based on racial discrimination;
• violence to life and person, in particular murder of all kinds, mutilation, **cruel treatment and torture;**
• committing outrages upon personal dignity, in particular humiliating and degrading treatment;
• seizing property of the adverse party not required by military necessity;
**• making civilian objects the object of attack;**

(2) <u>Similarly, **Article 147 of the Fourth Geneva Convention**</u> which defines war crimes as: "Willful killing, torture or inhuman treatment, including...willfully causing great suffering or serious injury to body or health, **unlawful deportation**

or transfer or **unlawful confinement of a protected person,** compelling a protected person to serve in the forces of a hostile power, or **willfully depriving a protected person of the rights of fair and regular trial,...**taking of hostages and extensive destruction and appropriation of property, not justified by military necessity and carried out unlawfully and wantonly."

(3)**At the same time, Ineffective Assistance of Counsel, Persecution, And Fast Track Deportation as applied to me Constitute an Act of Crime of Aggression under the Rome Statue of the International Criminal Court.**

## Definition of the crime of aggression:

Article 8 *bis* adopted in Kampala defines the individual crime of aggression as the planning, preparation, initiation or execution by a person in a leadership position of an act of aggression. **Importantly, it contains the threshold requirement that the act of aggression must constitute a manifest violation of the Charter of the United Nations.** Under the Statute, the definition of "crime of aggression" is stated as follows:

**Article 8 bis**

> 1. For the purpose of this Statute, "crime of aggression" means the planning, preparation, initiation or execution, by a person in a position effectively to exercise control over or to direct the political or military action of a State, **of an act of aggression which, by its character, gravity and scale, constitutes a manifest violation of the Charter of the United Nations.**
> 2. For the purpose of paragraph 1, "act of aggression" means the use of armed force by a State against the sovereignty, territorial integrity or political independence of another State, **or in any other manner inconsistent with the Charter of the United Nations.** Any of the following acts, regardless of a declaration of war, shall, in accordance with United Nations General Assembly resolution 3314 (XXIX) of 14 December 1974, qualify as an act of aggression:

**(4) Furthermore, Ineffective Assistance of Counsel, Persecution, And Fast Track Deportation as applied to me Constitute An Act of Crime Against Humanity.**

Crimes Against Humanity Definition:
An international criminal justice offence; the perpetration of acts of war upon a civilian, non-soldier population.

A term used by, within and as so defined by the <u>International Criminal Court</u> treaty and including any of the following acts when committed as part of a widespread or systematic attack directed against any civilian population, with knowledge of the attack:

- <u>Murder;</u>
- Extermination;
- Enslavement;
- **Deportation or forcible transfer of population;**
- **Imprisonment or other severe deprivation of physical liberty in violation of fundamental rules of international law;**
- <u>Torture;</u>
- Rape, sexual slavery, enforced prostitution, forced pregnancy, enforced sterilization, or any other form of sexual violence of comparable gravity;
- **Persecution against any identifiable group or collectivity on political, racial, national, ethnic, cultural, religious, gender, (...) or other grounds that are universally recognized as impermissible under international law (...)**
- **Enforced disappearance of persons;**
- The crime of apartheid;
- **Other inhumane acts of a similar character intentionally causing great suffering, or serious injury to body or to mental or physical health**.

<u>The treaty definition includes the following points of clarification:</u>

- 'Attack directed against any civilian population' means a course of conduct involving the multiple commission of acts ... against any civilian population, pursuant to or in furtherance of a State or organizational policy to commit such attack;
- 'Extermination' includes the intentional infliction of conditions of life, *inter alia* the deprivation of access to food and medicine, calculated to bring about the destruction of part of a population;
- 'Enslavement' means the exercise of any or all of the powers attaching to the right of ownership over a person and includes the exercise of such power in the course of trafficking in persons, in particular women and children;
- **'Deportation or forcible transfer of population' means forced displacement of the persons concerned by expulsion or other**

coercive acts from the area in which they are lawfully present, without grounds permitted under international law;

- 'Torture' means the intentional infliction of severe pain or suffering, whether physical or mental, upon a person in the custody or under the control of the accused; except that torture shall not include pain or suffering arising only from, inherent in or incidental to, lawful sanctions

- 'Forced pregnancy' means the unlawful confinement of a woman forcibly made pregnant, with the intent of affecting the ethnic composition of any population or carrying out other grave violations of international law. This definition shall not in any way be interpreted as affecting national laws relating to pregnancy;

- 'Persecution' means the intentional and severe deprivation of fundamental rights contrary to international law by reason of the identity of the group or collectivity;

- 'The crime of apartheid' means inhumane acts ... committed in the context of an institutionalized regime of systematic oppression and domination by one racial group over any other racial group or groups and committed with the intention of maintaining that regime; and

- 'Enforced disappearance of persons' means the arrest, detention or abduction of persons by, or with the authorization, support or acquiescence of, a State or a political organization, followed by a refusal to acknowledge that deprivation of freedom or to give information on the fate or whereabouts of those persons, with the intention of removing them from the protection of the law for a prolonged period of time.

**(5)** <u>However, The Canadian *Crimes against Humanity and War Crimes Act* defines; "Crimes Against Humanity" as:</u>

"... <u>murder</u>, extermination, enslavement, deportation, imprisonment, <u>torture</u>, sexual violence, persecution or any other inhumane act or omission that is committed against any civilian population or any identifiable group and that, at the time and in the place of its commission, **constitutes a crime against humanity according to customary international law or conventional international law or by virtue of its being criminal according to the general principles of law recognized by the community of nations,** whether or not it constitutes a contravention of the law in force at the time and in the place of its commission."

# Rights to Nationality

I am an African, Arabian, American, Afro-European, African-Canadian. Descendants of the Native Americans. A product of Slave, Slavery and Slave Trade of the Transatlantic Slave Trade. I am a Citizen of the present day United States of America. By Virtue of Creation, History, Natural Law, Natural Rights, Migration, Slavery & Refugee. I have Families in the United States namely :

1. Barrack Hussein Obama, President of the United States.

2. Dr. Martin Luther King Jr. The Great.

3. Muhammad Ali, Former Heavy Weight Boxing Champion.

4. Dame Elizabeth Rosemond "Liz" Taylor.

5. Tijani Bamidele Abdulsalam, U.S. Navy.

6. Rosetta Evette Johnson Ahmed, My Beloved Wife.

7.Taofik Solebo, Lisa Glass, Eddie Craine, Austine Shonaike, College Associates, Business Partners & Friends.

# Summary

I have a dream that my four little children will one day live in a nation where they will not be judged by the color of their skin, but by the content of their character. Martin Luther King, Jr.

I was judged by the color of my skin in 2002 when I was in the United States. Others have thier cases heard by the Highest Court of the Land. The United States Superme Court. That is the Court who has the final say when its comes to deportation not the Attorney General of the United States, Assistant U.S. Attorney or some low level immigration officers who are overidding the decision of the Supreme Court. "God Bless America"

# Conclusion

The Supreme Court has, as already noted recognized on more than one occassion that "deportation may result o loss 'of all that makes life worth living'." Bridges v. Wixon, 326 U.S. 135, 147, 65 S.Ct. 1443, 1449. 89. L.Ed. 2103, 2112 (1945), citing Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 495,66 L.Ed. 938. 943 (1922). In Concurrence, Judge Murphy stated :

The impact of deportation upon the life of an alien is often as great if not greater than the imposition of a criminal sentence. A deported alien may lose his family, his friends and livehood forever. Returning to his native land may result on porvery, persecution and even death. Bridges 326 U.S. at 164 1457 ( Murphy J. Concurring.

Commentators have pointed out the incongruity that "an alien convited of possession of more than thirty grams of marijuana may be deported, while a citizen convicted of mass murder cannot be." Kevin R. Johnson, "Alien and the U.S. Immigration Laws : The Social and Legal Construction of Non-Person, 28 U. Miami Inter-Am. L. Rev. 263, 265 (1997). "Society is ethically obligated to treat people, including aggravated felons, fairly. This end is not servd by removing aliens without giving them the opportunities to present their individual circumstances to administrative or Article III Judges." Alexander Tsesis , Toward a Just Immigration Policy : Putting Ethics into Immigration Law, 45 Wayne L. Rev. 105, 168 (1999).

In fact, the Supreme Court has even recognised that deportation does not always return the individual to his real hom.Tan  V. Phelan 333 U.S. 6, 10 (1948), citing Delgadillo v. Carmichael 332 U.S. 388 (1947). Deportation is a drastic measure and at time the equivalent of banishment or exile.

# Relief Sought

1.A Court order compelling the defendant to made to give me back my green card within 7 days of the recieved of this Complaints.

2. The individual who committs this War Crimes and Crimes Against Humanity should be brought to justice.

3. Monetary compensation for the unlawful acts committed against me.

4. The right to education should be a primary consideration, for my entry back into the United States.

5. All the Aliens that we were deported together are my witnesses in this case. A Court order compelling the Service to make them available for an oral hearing.

6. Any other relief the Honorable Court deems just and proper

7. Petitioner Pray that the Honorable Court grant this Complaints and proceed for an oral hearing.


Respecfully submitted,

*Ahmed*

Oluwashina Kazeem Ahmed-Al-Khalifa                Date 04|05|2013

Plaintiff Address :
5, Robert Onadipe Street
Gbagada Phase 1
Shomolu, Pedro
Lagos, Nigeria.

Email: oahmed005@yahoo.com                Tel: 00 234 810 380 4404


| Documents Submitted With This Complaints | Page Numbers |
|---|---|
| 1.Letters relating to H. Glenn Fogle Failure to file an appeal. | 1-3. |
| 2. Chicago Tribune report on the murder case of Joseph Michael Kalady | 1&2. |
| 3. Letter of Interview for adjustment of status & letter from U.S. Consulate General, Consular Section, Lagos, Nigeria. | 8 & 9. |
| 4. U.S. Department of Justice Letters of April 17 & 18, 2002. | 10 & 11. |
| 5. Court Papers and Documents Relating To My Appeal | 12 – 17. |

6. Papers Related to Tri County Detention Center        1-9.

7. Admission Letter from Georgia State University, My Mother Residence Status, Certificate of Marriage, Donation to Feed The Children U.S.A.    1-7.

8. Letter to Consulate General on Nigeria New York      42-43.

9. Letter from U.S. District Court (Illinois) & Letter served upon me by U.S. Marshal.        29-30.

10. United States Supreme Court Decision on Fast Track Deportation   1-2.

11. Court Record U.S. District Court Northern District of Georgia (Atlanta) Civil Docket For Case No. 1:02-cv-00551-RLV.      1-4.

12. Court Record U.S. District Court Northern District of Georgia (Atlanta) Civil Docket For Case No. 1:02-cv-01004-RLV.      1-3.

13. Affidavit showing Extreme Hardship & Renouncing Nigeria as my Native Country.      1-2.


# Certificate of Service

Plaintiff Respectfully Requst the Honorable Court to copy the defendants in this case. I cannot afford to serve the defendants. Because I am destitute facing Extreme Hardship since my unlawful deportation from the United States in June 2002.

Attorney General of the United States
Office of the Attorney General
950 Pennslyvania Av N.W.
Washington D.C. 20536

Chicago Police Department
City of Chicago
3510 South Michigan Avenue
Chicago, IL 60653

3. Frederick F. Cohn, Esq
601 South LaSalle Street---Suite 700
Chicago, IL 60605

4. Federal Public Defender
Central District of Illinos
401 Main Street, ---Suite 1500
Peoria, IL 61602

5. Law Office of Pomper & Goodman
22 W. Monroe Street ----Suite # 1800
Chicago, IL 60603

6.Dupage County Jail
501 N County Farm Rd,
Wheaton, IL 60187

7. Tri County Detention Center
1026 Shawnee College Road
Ullin, IL 62992

8. Attorney General of Canada
284 Wellington Street
Ottawa, ON
KIA  OH8 Canada

9. Attorney General & Minister of Justice
Federal Ministry of Justice
Federal Secretariat, Central District
Garki-Abuja Nigeria

Respecfully submitted,

*Ahmed*

Oluwashina Kazeem Ahmed-Al-Khalifa                 Date 04/05/2013

EX. I

BOARD OF IMMIGRATION APPEALS
CLERK OFFICE
P. O. BOX 8530
FALLS CHURCH, VA 22041

RE: A-70-530-620

Dear Sir/Ma,

On Sept. 7, 2000 I was granted
a voluntary Departure in Atlanta by an
Immigration Judge. The Attorney who acted
on my behalf, was Glen fogle, who was
suppose to file an appeal with the
BIA. See enclosed documents. And
receipt of payments to Counsel.

Therefore I would like to know
if an appeal was ever filed with the
BIA or not. Your immediate reply will
be duely appreciated.

Ahmad

OLUWASHINA AHMED
TRI COUNTY DETENTION CENTER
1026 SHAWNEE COLLEGE RD
ULLIN, IL 62992

04/25/02
DATE

①

Ex. J

# H. Glenn Fogle, Jr., P.C.

Attorney at Law
The Grant Building, Suite 600
44 Broad Street, N.W.,
Atlanta, Georgia 30303
E-Mail: vogelbird@aol.com

Telephone (404) 522-1852

Facsimile (404) 522-9933

## **RECEIPT**

September 21, 2000

Received from Oluwashina Ahmed $110.00 cash for the filing fee for his appeal to the BIA.

H. Glenn Fogle, Jr.

Ex. K.



**U.S. Department of Justice**
Executive Office for Immigration Review
Board of Immigration Appeals, Office of the Clerk
P.O. Box 8530
5201 Leesburg Pike, Suite 1300
Falls Church, Virginia 22041

5-6-02
_____
Date

☐ **Name and "A" Number Unrelated**
   The alien registration number referenced in your
   submission does not correspond to the alien's name.
   This material is returned to you so that this information
   can be verified or corrected.

> Your submission is being returned for the reason(s) indicated. No record has been made of this correspondence and should you write again concerning this same matter, please return this notice along with your correspondence.

☐ **No "A" Number**
   Cases at the Board of Immigration Appeals are
   retrievable primarily by the alien's registration number ("A" number). As your
   submission does not provide the "A" number, this case cannot be located.

☐ **No Record of Case Pending**
   The Board of Immigration Appeals shows no record that this case, as referenced in
   your submission, is pending before it. You may wish to verify the name and "A"
   number.

☐ **Foreign Language Translation Required**
   The Board of Immigration Appeals does not have translators available and cannot
   read your submission. Title 8, Code of Federal Regulations, Section 3.33, requires
   that any foreign language document offered by a party in a proceeding be
   accompanied by an English translation and a certification by the translator that he or
   she is competent to translate the document and that the translation is accurate. You
   may have your submission translated and returned to the Board.

☐ **Decision Rendered**
   The Board of Immigration Appeals has rendered a decision in this case and there is
   nothing presently pending before the Board concerning this case.

☐ **Other:** No appeal has ever been
filed. The appeal was due 10-10-00

_____
Appeals Support Team, Office of the Clerk

③

Reuters photo by Win McNamee

President Bush greets the crowd during Pearl Harbor ceremonies Friday aboard the carrier USS Enterprise in Norfolk, Va.

■ **Chicago remembers Pearl Harbor.** PAGE 19

Station to commemorate the day the U.S. was attacked six decades ago at Pearl Harbor, Hawaii. Twenty-five men who survived the Japanese strike that December day in 1941 stood side by side Friday with sailors who recently returned from launching the first military strikes on Afghanistan.

Bush said both conflicts started with unprovoked sneak attacks on the United States that could not be resolved through truce or treaty. The president said the military campaign

PLEASE SEE **BUSH**, PAGE 12

Tribune foreign correspondent

TORA BORA, Afghanistan — The search for Osama bin Laden along miles of rolling dusty hills and ravines is not a coordinated, police-style manhunt. It is a war, imprecise and slow-moving.

An American B-52 flew wide, high circles in the blue sky for hours Friday over the remote desert landscape where a trapped force of bin Laden's Al Qaeda fighters is holed up. A minute after turning sharply away, its payload struck in a shimmering explosion that sent a plume of black and gray smoke rising above the low-slung

PLEASE SEE **TORA BORA**, PAGE 12

Qaeda survivor from the hills: "Zamat! Zamat! Are you alive?"

There was no answer but other chatter continued on the Arab frequency.

One opposition commander in the area was convinced that radio traffic his men picked up indicated that bin Laden was in the mountains. Zein Huddin said Friday night that his forces had intercepted Arabic communications between fighters near Tora Bora and allies in Kandahar before the Taliban abandoned the southern city.

"We have intercepted radio messages from Kandahar to the

---

## Unemployment soars

The nation's unemployment rate hit 5.7 percent in November, the highest level since August 1995.

**MONTHLY RATES**
*Seasonally adjusted*



November: 5.7 percent

August 1995: 5.7 percent

1995 1996 1997 1998 1999 2000 2001

**NON-FARM JOB CUTS**
Since the beginning of the year, U.S. employers have cut almost 1 million jobs from their payrolls.
*Change from previous month, scale in thousands*



November: 331,000 job cuts

J F M A M J J A S O N

Source: Bureau of Labor Statistics    Chicago Tribune

---

# ID fraud figure, pals charged in murder

## Body tied to ruse in planned escape

**By Mark O'Connor**
**and Matt O'Connor**
Tribune staff reporters

Joseph Michael Kalady wanted his victim relaxed, so he sat him down in his favorite living-room recliner and flipped the TV to the "Wizard of Oz," authorities say.

A chilling account contained in charges released Friday goes on to describe how the 450-pound Kalady sneaked up on William White holding a plastic grocery bag behind his back, jumped on top of him and pinned him to the chair.

As Kalady's friend grabbed the struggling White's hands, Kalady, the charges say, suffocated White with the bag and stuffed the belt of a cloth robe into his mouth while pinching his nose shut.

They then propped the body up in the chair and dressed it in Kalady's robe, hoping to pass it off as Kalady so he could leave town and avoid federal prosecution for fraud, authorities said.

But the plot, which investigators described as detailed and well thought-out, crumbled. On Friday, Kalady, 61, and four others, including Kalady's family physician, Dr. Gabriel Tiganyi, 46, who is accused of counseling Kalady on how to kill and avoid detection by police, were charged in White's death.

Also charged were Kalady's friend Raul R. Rodriguez, 41, who is accused of assisting in the killing; Kalady's brother, Michael, 50, who is accused of taking part in the murder plot and cover-up; and another relative, Justin Smith, 21, who is accused of renting a car for Kalady's escape.

The federal charges—including murder and aiding and abetting in murder—could result in the death penalty for the five defendants, all of whom live in Chicago, U.S. Atty. Patrick J. Fitzgerald told reporters late Friday in the lobby of the Dirksen Federal Building.

Investigators said that the case was under investigation and wouldn't rule out charging additional suspects.

In a criminal complaint de-

PLEASE SEE **SCHEME**, PAGE 16

---

## INSIDE

### WORLD

**Israel strikes anew**

Attack comes amid growing Palestinian schism. PAGE 3

### HOLIDAY CAMPAIGN

**Giving shelter**

House hunter columnist Genevieve Buck tells how you can help families seeking refuge from violence. NEW HOMES

## INDEX

| | | | |
|---|---|---|---|
| BUSINESS | SEC.2 | NEW HOMES | SEC.4 |
| COMICS | SEC.1 P.32,33 | SPORTS | SEC.3 |
| CLASSIFIED | SEC.2,4 | TV LISTINGS | SEC.1 P.34 |
| EDITORIALS | SEC.1 P. 24 | WEATHER | SEC.1 P.26 |
| METRO | SEC.1 P.19 | WEEKEND | SEC.1 P.27 |
| NATION | SEC.1 P.13 | NATION | SEC.1 P.13 |

**Weather:** Overcast; high 39, low 24
**Tomorrow:** Sunny; high 42

24 hours a day go to
chicagotribune.com



7 49485 00001 2

---

CHICAGO TRIBUNE, DEC 8, 2001

EX. 3 ①

# SCHEME:

## Officials say man confessed to killing

CONTINUED FROM PAGE 1

tailing what Fitzgerald called a "callous" plot, authorities said Kalady had told relatives about his murder plan and advised them to go out for dinner during the murder. Some of the family members ate at a Chuck E. Cheese's pizzeria with the doctor.

According to the charges, Kalady, described by prosecutors as a consummate con man who has spent more than 20 years in prison, had been plotting his "death" for weeks, exaggerating his health problems to repeatedly delay hearings on charges that he ran a false document mill in a Northwest Side office.

Tiganyi, who has been Kalady's physician for about five years, told police he joined the scheme because he was



Tribune photo by Heather Stone

**U.S. State's Atty. Patrick J. Fitzgerald says five people have been charged in the murder plot. All may face the death penalty.**

heavily in debt and expected to be paid "thousands of dollars" from Kalady.

Tiganyi said he agreed to sign Kalady's death certificate to give it a look of authenticity. While eating with Kalady's niece and her husband at Chuck E. Cheese's on Sunday, Tiganyi was paged by Kalady and drove to his home in the 2300 block of North Campbell Avenue.

Tiganyi told police he saw the dead man in the recliner. Apparently spooked, he refused to sign the death certificate and left.

The charges alleged that Tiganyi's involvement began in October when he helped Kalady fool the court into thinking Kalady had suffered a diabetic coma and needed up to five weeks to recover.

Authorities said Kalady offered Rodriguez at least $1,000 to search for a Kalady look-alike at places such as soup kitchens and the Salvation Army.

Tiganyi later told police that Kalady had explained to him that "there are thousands of homeless people and no one would miss one."

Police said a man not yet charged in the case found White and introduced him to Kalady.

Authorities say Kalady hired White to his North Side basement apartment by recruiting him to housesit.

Prosecutors said Kalady's plot may have worked but investigators decided to travel to a crematorium in suburban Romeoville to view the body.

Inside a cardboard box at Cremation Society of Illinois was a 176-pound body—not the 450-pound Kalady. Fingerprints proved the body was that of White, 47, an ex-convict living in the Uptown neighborhood

who was trying to turn his life around, his family said.

"[They] took my brother's identification, his car, his wallet, his keys and left him to die in humiliation," said a sister of White's who asked not to be named. "I'm very, very hurt. I can't forgive this."

Kalady, who had been ordered confined to his home with an electronic monitor while awaiting trial on the fraud charges, fled to the Boston area in the rented car after the killing, authorities say.

Kalady telephoned Assistant U.S. Atty. T. Markus Funk from Boston after hearing police were questioning relatives and friends about the murder, according to the charges.

Four Chicago police detectives, two Secret Service agents, several federal prosecutors and Kalady's attorney listened as Kalady was given his Miranda rights and confessed to suffocating White.

During the call, Kalady announced he was killing himself with an injection.

But authorities had traced the call and agents rushed into an apartment and found Kalady on the floor.

He was taken to a hospital, where on Friday he was told of the charges against him. Officials expect him to be returned to Chicago soon to face the charges.

Before plotting his escape, Kalady faced no more than 20 years in prison, Fitzgerald said.

Even though Kalady cooperated in a sting operation that snared eight others in the false ID ring, prosecutors opposed his release, noting his extensive criminal history. Kalady once hid out as a cook at a Wisconsin monastery while he was wanted on charges in Wyoming, court records show.

At a closed hearing in September, his lawyer, Michael B. Cohen, protested, citing Kalady's extensive cooperation. "He's not going anywhere," Cohen told U.S. Magistrate Judge Sidney Schenkier. "What bothers me because of all that he did for the government, they're not bending over backwards to help him . . . I think he ought to be rewarded for what he did."

Schenkier ordered Kalady released to house arrest under the supervision of his niece.

*Tribune staff reporter Karen Rivedal contributed to this reporter.*

---

# Defense could rest as soon as Tuesday

CONTINUED FROM PAGE 1

inseparable," he said. "She per-

statements that her intention was to do her husband "a favor so he could race cars and go out with his girlfriend."

"I did not find that to be a believable statement," he said.

What was true in his opinion, he said, was that Lemak was angry with her husband over his girlfriend, but the anger was separate from her act to kill her

all the good ts are gone!



**U.S. Department of Justice**

**Immigration and Naturalization Service**
MLK FEDERAL BUILDING
77 FORSYTH STREET, S. W.

ATLANTA, GA 30303

File Number   A70 530 620

**ROSETTA EVETTE AHMED**          Date      01/25/2002
**1406 BROCKETT WAY**
**CLARKSTON GA 30021**

Please come to the office shown below at the time and place indicated in connection with an official matter.

| OFFICE LOCATION | MLK FEDERAL BUILDING          Room No. 350          Floor No.    3RD<br>77 FORSYTH STREET, S. W.<br><br>ATLANTA, GA 30303 |
|---|---|
| DATE AND HOUR | 04/04/2002    10:00 AM |
| ASK FOR | M. ELLIS, SDAO |
| REASON FOR APPOINTMENT | TO REVIEW YOUR RELATIVE PETITION (I-130). |
| BRING WITH YOU | THIS LETTER, PHOTO I.D., AND PLEASE COMPLY WITH THE ATTACHMENT. |

**IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.**
If you are unable to do so, state your reason, sign below and return this letter to this office at once.

CC:   H. GLENN FOGLE, JR.
      H. GLENN FOGLE JR., P.C.

| I am unable to keep the appointment because: | |
|---|---|
| | |
| SIGNATURE | DATE |

Very truly yours,

ROSEMARY L. MELVILLE
DISTRICT DIRECTOR

Form G-56
(Rev. 5-





# U. S. Consulate General
## Consular Section
2. Walter Carrington Crescent
Victoria Island, Lagos, Nigeria
E-mail: lagoscons2@state.gov

Sent: _____

To: Department of Homeland Security

_____

Subject: *DEPORTEE CASE*
ALIEN # .... ~~AN~~ A705306.20 (AHMED OLUWASHINA)
DOB:.. 9TH NOV 1969
Current Address: 5 ROBERT ONADIPE STREET, CIBAGADA PHASE

.........................................................................

Phone Number:.. 081 0380 4404

1. The under mentioned alien was seen by a Consular Officer, Lagos, Nigeria on
........ 30TH MAY 2012 .....................................

2. Date, place and manner of entry into the
USA: OBTAINED A B1|B2 VISA FROM THE U.S. EMBASSY IN COTONOU REPU
OF BENIN. POE WAS JFK AIRPORT, NEW YORK. .............................

..........................................................................

3. Residence and employment (if any) of the alien in the
US: RESIDENCE — (1) 4033 FLATSHOALS RD, APT 1706, UNION CITY, 30291, GEORG
(2) 1406 BROCKETT WAY, CLARKSON, GEORGIA 30021

EMPLOYMENT :— SELF- EMPLOYED SOUND ENGINEER AND STUDENT.

4. Arrests or legal issues, other than immigration violations, occurring during the alien's presence in the
United States: YES. FALSE IDENTIFICATION/DAMAGE TO PROPERTY.

..........................................................................

..........................................................................

5. Alien's family status in the USA and IV petition status, if any reason voluntary departure was granted:
ONE AMCIT WIFE. IV PETITION FILED BY WIFE BEFORE DEPORTATION WAS NOT GRANTED.
6. Approximate date voluntary departure was granted: ... CLAIMS JUNE 2002 ............

7. Approximate length of the alien's period of unlawful presence in the USA, as defined in sections
212(a)(9)(B)(i) and (ii) of the
INA. 10 YEARS ...........................

Seen by a Consular Officer, Lagos, Nigeria.
.........................................................................

⑨



2nd Habeas.

**U. S. Department of Justice**

EXB. No 2

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| *Thomas P. Walsh*<br>*Assistant United States Attorney* | *Dirksen Federal Building*<br>*219 South Dearborn Street, Fifth Floor*<br>*Chicago, Illinois 60604* | *Direct Line: (312) 353-5312*<br>*Fax: (312) 886-4073* |

April 17, 2002

Michael W. Dobbins
Clerk, United States District Court,
  Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

  Attn: Civil Docketing

  Re: *Oluwashina Ahmed v. John Ashcroft*, No. 02 C 2713,
    (N. D. Ill.)

Dear Mr. Dobbins:

  The above case has been assigned within this office to
Assistant United States Attorney **Sheila Entenman**, who can be
reached at **(312) 353-8788**. This letter is provided for
informational purposes only and does not constitute an appearance,
a motion or a responsive pleading and does not waive any defenses.

  Thank you for your assistance.

      Very truly yours,

      PATRICK J. FITZGERALD
      United States Attorney

        */S/*
     By:
       THOMAS P. WALSH
       Assistant United States Attorney
       Chief, Civil Division

cc:

  Oluwashina Ahmed
  Tri-County Detention Center
  1026 Shawnee College Road
  Ullin, Illinois 62992



_Mandamus complaint._



**U. S. Department of Justice**

_United States Attorney_
_Northern District of Illinois_

| | | |
|---|---|---|
| _Thomas P. Walsh_<br>_Assistant United States Attorney_ | _Dirksen Federal Building_<br>_219 South Dearborn Street, Fifth Floor_<br>_Chicago, Illinois 60604_ | _Direct Line: (312) 353-5312_<br>_Fax: (312) 886-4073_ |

April 18, 2002

Michael W. Dobbins
Clerk, United States District Court,
  Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

     Attn:  Civil Docketing

     Re:  _Oluwashina Ahmed v. Brian Perryman_, No. 02 C 2768,
        (N. D. Ill.)

Dear Mr. Dobbins:

     The above case has been assigned within this office to
Assistant United States Attorney **Sheila Entenman**, who can be
reached at **(312) 353-8788**. This letter is provided for
informational purposes only and does not constitute an appearance,
a motion or a responsive pleading and does not waive any defenses.

     Thank you for your assistance.

                 Very truly yours,

                 PATRICK J. FITZGERALD
                 United States Attorney

                     /S/
              By:
                 THOMAS P. WALSH
                 Assistant United States Attorney
                 Chief, Civil Division

cc:

     Oluwashina Ahmed
     Tri-County Detention Center
     1026 Shawnee College Road
     Ullin, Illinois 62992

# AFFIDAVIT ACCOMPANYING MOTION FOR
## PERMISSION TO APPEAL IN FORMA PAUPERIS
### United States Court of Appeals
for the Seventh Circuit

Mark Ayilla (a.ka)
Oluwashina Ahmed

)  Appeal from the United States District Court for the
)  _____ District of _____
)
v.  Case No. 02-1068
)  District Court No. 01-CR-737-1
)
U.S. OF AMERICA
)  District Court Judge HON. H.D. LEINENWEBER

## Affidavit in Support of Motion

I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)

Signed: _MMAyilla_

## Instructions

Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.

Date: _02-11-02_

**My issues on appeal are:** I am appealing the judgement entered by Honorable D. Leinenweber, in U.S. vs Mark Ayilla (01-CR-737-1) on Dec. 20th, 2001. Due to ineffective assistance of counsel by Steven D. Pick (my Attorney).

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ -0- | $ -0- | $ 0- | $ 0.-0 |
| Self-employment | $ -0- | $ -0- | $ -0- | $ 0- |
| Income from real property (such as rental income) | $ -0- | $ -0- | $ 0- | $ -0- |
| Interest and dividends | $ -0- | $ 0- | $ -0-0 | $ 0- |
| Gifts | $ -0- | $ -0- | $ 0- | $ -0- |
| Alimony | $ -0- | $ -0- | $ -0- | $ -0- |
| Child support | $ -0- | $ -0- | $ -0- | $ -0- |
| Retirement (such as social security, pensions, annuities, insurance) | $ -0- | $ -0 | $ -0- | $ 0- |
| Disability (such as social security, insurance payments) | $ -0- | $ 0- | $ -0- | $ -0- |
| Unemployment payments | $ -0- | $ -0- | $ -0- | $ 0-0- |
| Public-assistance (such as welfare) | $ 0- | $ | $ -0- | $ -0- |
| Other (specify): _____ | $ -0- | $ -0- | $ -0- | $ -0- |
| **Total monthly income:** | $ 0 | $ -0- | $ -0- | $ -0- |

1



# Federal Public Defender
## Central District of Illinois

401 Main Street, Suite 1500
Peoria, IL 61602

RICHARD H. PARSONS
Chief Federal Defender

Telephone: (309) 671-7891
Telefax: (309) 671-7898

April 16, 2002

Mr. Mark Ayilla
Reg.No. 20532-424
c/o Tri-County Detention Center
106 Shawnee College Road
Ullin, IL 62992

**RE:** **UNITED STATES OF AMERICA v. MARK AYILLA**
**Northern District of Illinois Court No. 01-CR-737**
**Seventh Circuit Court of Appeals No. 02-1068**

Dear Mr. Ayilla:

By order dated April 12, 2002, the United States Court of Appeals for the Seventh Circuit has appointed the Federal Public Defender for the Central District of Illinois to represent you in the appeal from your recent conviction in the United States District Court for the Northern District of Illinois, Eastern Division.

The Court of Appeals considers only evidence presented to the District Court and does not hear witnesses or consider evidence not presented in the lower court. Rather, the Court will decide your case based on the written briefs that I will prepare on your behalf and the brief prepared by the United States Attorney, who represents the prosecution. Our brief is due by **June 11, 2002**, and the Government's brief is due a month later. If necessary, we can file a reply brief two weeks after the Government's brief is filed. Sometimes it is necessary for attorneys to obtain extensions of time to file the briefs. I will send you copies of all of the briefs filed in your case and let you know if either the U.S. Attorney or I need additional time to file a brief. For this reason, it is extremely important that you keep me informed of your location in the event you are transferred to another institution so I know where to contact you at all times.

After all of the briefs are filed, the Court of Appeals will decide whether they want to hear oral arguments in the case. If the Court orders oral argument, I will present the case on your behalf before a panel of three United States Circuit judges. Although the hearing is open to the public, you will not be permitted to attend the argument. The arguments will be based quite substantially on the briefs submitted.

EXB. NO 5

Whether the Court decides the case with or without oral argument, the case will be decided in a written decision by three judges. The decision will be sent to both of us when it is issued. If the case is argued, the decision will generally be issued about ninety (90) days after argument, although sometimes it can be earlier and sometimes it can take considerably longer.

It is hard to predict entirely how long it will take to decide your case. This depends on whether the briefs are filed without extension, how soon the case is scheduled for argument, and how long it takes the Court to decide the case. My experience is that most criminal cases are decided between six months and one year after appointment of counsel. If the Court of Appeals affirms your conviction and sentence, I will inform you of what additional remedies you have at that time.

If necessary, I would certainly come to see you to discuss your case, but generally that is not necessary. Because the appeal is based on the record already before the Court, I have found that in most cases I can communicate by letter or telephone with my appellate clients who are incarcerated. I encourage you to write to me about anything you think I should know about your case. I would be interested in the issues you think should be raised on appeal, but ultimately it is my duty to decide what issues are included in the brief. I will respond promptly to your letters. If it is easier, **you may call me collect at 309/671-7891. I will accept your call if I am in the office and not otherwise busy**. Please understand, however, that sometimes I will not be here or I will not be able to take your call, in which case you should try your call again later.

I look forward to representing you in your appeal. If you have any questions about your appeal or anything contained in this letter, please do not hesitate to contact me.

Yours very truly,

RICHARD H. PARSONS
Federal Public Defender

By:

Jonathan E. Hawley
Assistant Federal Public Defender
Appellate Division Chief

JEH*mkk
Enclosure

EXB. NO6

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

April 12, 2002

By the court:

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     Plaintiff-Appellee, | ] Appeal from the United<br>] States District Court for<br>] the Northern District of<br>] Illinois, Eastern Division. |
| No. 02-1068        v. | ]<br>] No. 01 CR 737 |
| MARK AYILLA, also known as<br>LUWASHINA AHMED<br>     Defendant-Appellant. | ]<br>] Harry D. Leinenweber,<br>]     Judge. |

Pursuant to this court's order of March 7, 2002, IT IS ORDERED that Chief Federal Defender Richard H. Parsons, 401 N. Main Street, Peoria, Illinois 61602, is appointed to represent defendant-appellant Mark Ayilla. Counsel is directed to contact the defendant-appellant immediately.

Briefing shall proceed as follows:

1.  Defendant-appellant shall file his brief and required short appendix on or before June 11, 2002.

2.  Plaintiff-appellee shall file its brief on or before July 11, 2002.

3.  Defendant-appellant shall file his reply brief, if any, on or before July 25, 2002.

Note: Circuit Rule 31(e) (amended Dec. 1, 2001) requires that counsel tender a digital copy of a brief, from cover to conclusion, at the time the paper copies are tendered for filing. The file must be a text based PDF (portable document format), which contains the entire brief from cover to conclusion. Graphic based scanned PDF images do not comply with this rule and will not be accepted by the clerk.

Rule 26(c), Fed. R. App. P., which allows three additional days after service by mail, does not apply when the due dates for briefs are specifically set by order of this court. All briefs are due by the dates ordered.

# United States Court of Appeals

## For The Seventh Circuit

219 South Dearborn Street
Chicago, Illinois 60604

Gino J. Agnello
Clerk
312-435-5850

5/24/02

Re: 02-1068 US v. Ayilla

To whom it may concern, Mr. Ayilla has a pending appeal before this court as of this date.

Sincerely,

Pro Se Clerk

EXB. NO 8

CLERK OF THE COURT
U.S. COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
CHICAGO, IL. 60604

U.S.C.A.—7th Circuit
RECEIVED
MAY 2 4 2002 P.G.
GINO J. AGNELLO
CLERK

RE: 02-1068

Dear Sir,
          Kindly send me a letter
Stating that I have a direct
appeal pending with the Court.

          Your reply will be duely
appreciated.

Respectfully Submitted
MrAyella                          05/21/02
Mark Ayilla a.K.a               DATE
OLUWASHINA AHMED
TRI COUNTY DETN. CENTER
105 SHAWNEE COLLE
ULLIN, IL 62992

(17)

ATTN: SECRETARY

GRW/ Tri-County Detention Center
Inmate Request Form

Inmate Name: **Mark Aylla**          Cell #: **A pod**

Date: **04/11/02**   Time: **11:40**   am/pm

Circle one of the following:

Medical   (Request)   Grievance   Attorney   Clergy/Minister

State nature of the request: I did not get my Commissary
today, I would like to know what
happened to my money. I will need
a notarized statement of account.

**MMAylla**
Inmate Signature          Officer Signature          Time Rec'd

Date and Time Reviewed _____ / _____ / _____

Action Taken **4-12-02**

Attached statement. Does not need to
be notarized.

**Steele**

Asst. Administrator     Administrator     Date and Time Rec'd

Co-Payment fees: $15.00          to see Jail Doctor
Co-Payment fees: $ 5.00          to see Jail Nurse

(1)

**Resident Account Summary**
**Friday, April 12, 2002   @09:03**

For Booking#:I-IL-02-0105     AYILLA, MARK

| Date | Transaction | Description | Amount | Balance | Owed | Held | Reference |
|------|-------------|-------------|--------|---------|------|------|-----------|
| 04/10/2002 | COPYGHRGE | 04/09/02 4 COPIES | 0.20 | 0.00 | 26.12 | 0.00 | |
| 04/10/2002 | COPYGHRGE | 04/08/02 8 COPIES | 0.40 | 0.00 | 25.92 | 0.00 | |
| 04/10/2002 | COPYGHRGE | 04/04/02  8 COPIES | 0.40 | 0.00 | 25.52 | 0.00 | |
| 04/08/2002 | COPYGHRGE | 04/05/02 72 COPIES | 3.60 | 0.00 | 25.12 | 0.00 | |
| 04/08/2002 | COPYGHRGE | 04/05/02 28 COPIES | 1.40 | 0.00 | 21.52 | 0.00 | |
| 04/08/2002 | <COPYGHRGE> | 04/05/02 80 COPIES | -0.07 | 0.00 | 20.12 | 0.00 | |
| 04/08/2002 | COPYGHRGE | 04/05/02 80 COPIES | 4.00 | 0.07 | 20.19 | 0.00 | |
| 04/08/2002 | POSTCHARE | 04/03/02 | -1.03 | 0.07 | 16.19 | 0.00 | |
| 04/08/2002 | POSTCHARE | 04/05/02 | -7.90 | 1.10 | 16.19 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | VOID-04/02/02 72 COPIES | 3.60 | 9.00 | 16.19 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | VOID-04/02/02 28 COPIES | 1.40 | 5.40 | 12.59 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | VOID-04/02/02 80 COPIES | 4.00 | 4.00 | 11.19 | 0.00 | |
| 04/05/2002 | COPYGHRGE | 04/04/02 | 0.20 | 0.00 | 7.19 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | 04/04/02 210 COPIES | -3.01 | 0.00 | 6.99 | 0.00 | |
| 04/05/2002 | COPYGHRGE | 04/04/02 210 COPIES | 10.00 | 3.01 | 10.00 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | 04/02/02 148 COPIES | -7.40 | 3.01 | 0.00 | 0.00 | |
| 04/05/2002 | COPYGHRGE | 04/02/02 148 COPIES | 7.40 | 10.41 | 7.40 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | 04/02/02 72 COPIES | -3.60 | 10.41 | 0.00 | 0.00 | |
| 04/05/2002 | COPYGHRGE | 04/02/02 72 COPIES | 3.60 | 14.01 | 3.60 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | 04/02/02 28 COPIES | -1.40 | 14.01 | 0.00 | 0.00 | |
| 04/05/2002 | COPYGHRGE | 04/02/02 28 COPIES | 1.40 | 15.41 | 1.40 | 0.00 | |
| 04/05/2002 | <COPYGHRGE> | 04/02/02 80 COPIES | -4.00 | 15.41 | 0.00 | 0.00 | |
| 04/05/2002 | COPYGHRGE | 04/02/02 80 COPIES | 4.00 | 19.41 | 4.00 | 0.00 | |
| 04/05/2002 | PHONECARD | 04/05/02 | -30.00 | 19.41 | 0.00 | 0.00 | |
| 04/05/2002 | POSTCHARE | 04/05/02 | -0.68 | 49.41 | 0.00 | 0.00 | |
| 04/05/2002 | POSTCHARE | 04/03/02 | -7.45 | 50.09 | 0.00 | 0.00 | |
| 04/04/2002 | <MISCCHRGE> | 04/03/02 (2 PAIR OF BRIEF | -7.00 | 57.54 | 0.00 | 0.00 | |
| 04/04/2002 | MISCCHRGE | 04/03/02 (2 PAIR OF BRIEF | 7.00 | 64.54 | 7.00 | 0.00 | |
| 04/04/2002 | POSTCHARE | 04/04/02 | -1.56 | 64.54 | 0.00 | 0.00 | |
| 04/03/2002 | <COPYGHRGE> | 04/01/02 68 COPIES | -3.40 | 66.10 | 0.00 | 0.00 | |
| 04/03/2002 | COPYGHRGE | 04/01/02 68 COPIES | 3.40 | 69.50 | 3.40 | 0.00 | |
| 04/03/2002 | <COPYGHRGE> | 03/26/02 3 COPIES | -0.15 | 69.50 | 0.00 | 0.00 | |
| 04/03/2002 | COPYGHRGE | 03/26/02 3 COPIES | 0.15 | 69.65 | 0.15 | 0.00 | |
| 04/03/2002 | EPR | OID:100001681-ComisaryPur | -18.51 | 69.65 | 0.00 | 0.00 | |
| 04/03/2002 | POSTCHARE | 04/03/02 | -10.88 | 88.16 | 0.00 | 0.00 | |
| 04/02/2002 | POSTCHARE | 04/02/02 | -1.02 | 99.04 | 0.00 | 0.00 | |
| 04/01/2002 | DEPMO | 04/01/02 SAMSON MARTIN | 100.00 | 100.06 | 0.00 | 0.00 | |
| 04/01/2002 | POSTCHARE | 04/01/02 | -0.34 | 0.06 | 0.00 | 0.00 | |
| 03/28/2002 | POSTCHARE | 03/28/02 | -0.68 | 0.40 | 0.00 | 0.00 | |
| 03/28/2002 | POSTCHARE | VOID-03/28/02 | 1.02 | 1.08 | 0.00 | 0.00 | |
| 03/28/2002 | POSTCHARE | 03/28/02 | -1.02 | 0.06 | 0.00 | 0.00 | |
| 03/27/2002 | EPR | OID:100001614-ComisaryPur | -16.11 | 1.08 | 0.00 | 0.00 | |
| 03/27/2002 | ERF | OID:100001614-ComisaryRef | 16.11 | 17.19 | 0.00 | 0.00 | |
| 03/27/2002 | EPR | OID:100001614-ComisaryPur | -16.11 | 1.08 | 0.00 | 0.00 | |
| 03/26/2002 | POSTCHARE | 03/26/02 | -5.13 | 17.19 | 0.00 | 0.00 | |
| 03/25/2002 | POSTCHARE | 03/25/02 | -0.68 | 22.32 | 0.00 | 0.00 | |
| 03/22/2002 | <COPYGHRGE> | 03/22/02 (36 COPIES) | -1.80 | 23.00 | 0.00 | 0.00 | |
| 03/22/2002 | COPYGHRGE | 03/22/02 (36 COPIES) | 1.80 | 24.80 | 1.80 | 0.00 | |
| 03/22/2002 | <COPYGHRGE> | 03/22/02 (9 COPIES) | -0.45 | 24.80 | 0.00 | 0.00 | |
| 03/22/2002 | COPYGHRGE | 03/22/02 (9 COPIES) | 0.45 | 25.25 | 0.45 | 0.00 | |
| 03/22/2002 | <COPYGHRGE> | 03/20/02 (2 COPIES) | -0.10 | 25.25 | 0.00 | 0.00 | |
| 03/22/2002 | COPYGHRGE | 03/20/02 (2 COPIES) | 0.10 | 25.35 | 0.10 | 0.00 | |
| 03/22/2002 | PHONECARD | 03/22/02 | -30.00 | 25.35 | 0.00 | 0.00 | |
| 03/22/2002 | POSTCHARE | 03/22/02 | -0.68 | 55.35 | 0.00 | 0.00 | |
| 03/21/2002 | <MISCCHRGE> | 03/21/02 (6 MANILLA ENVEL | -0.90 | 56.03 | 0.00 | 0.00 | |
| 03/21/2002 | MISCCHRGE | 03/21/02 (6 MANILLA ENVEL | 0.90 | 56.93 | 0.90 | 0.00 | |
| 03/20/2002 | <COPYGHRGE> | 03/19/02 (18 COPIES) | -0.90 | 56.93 | 0.00 | 0.00 | |
| 03/20/2002 | COPYGHRGE | 03/19/02 (18 COPIES) | 0.90 | 57.83 | 0.90 | 0.00 | |
| 03/20/2002 | EPR | OID:100001511-ComisaryPur | -19.75 | 57.83 | 0.00 | 0.00 | |
| 03/20/2002 | POSTCHARE | 03/20/02 | -1.03 | 77.58 | 0.00 | 0.00 | |
| 03/15/2002 | PHONECARD | 03/15/02 | -30.00 | 78.61 | 0.00 | 0.00 | |
| 03/15/2002 | DEPMO | 03/15/02 JOHN | 100.00 | 108.61 | 0.00 | 0.00 | |
| 03/15/2002 | <COPYGHRGE> | 03/15/02 3 COPIES | -0.15 | 8.61 | 0.00 | 0.00 | |
| 03/15/2002 | COPYGHRGE | 03/15/02 3 COPIES | 0.15 | 8.76 | 0.15 | 0.00 | |



```
========================================================
               TRI COUNTY DETENTION CENTER
========================================================

                 Resident Account Summary
                Friday, April 12, 2002  @09:03
========================================================================================
```

For Booking#:I-IL-02-0105    AYILLA, MARK
----------------------------------------------------------------------------------------

| Date | Transaction | Description | Amount | Balance | Owed | Held | Reference |
|------|-------------|-------------|--------|---------|------|------|-----------|
| 03/15/2002 | <COPYGHRGE> | 03/15/02 12 COPIES | -0.60 | 8.76 | 0.00 | 0.00 | |
| 03/15/2002 | COPYGHRGE | 03/15/02 12 COPIES | 0.60 | 9.36 | 0.60 | 0.00 | |
| 03/15/2002 | <COPYGHRGE> | 03/15/02 5 COPIES | -0.25 | 9.36 | 0.00 | 0.00 | |
| 03/15/2002 | COPYGHRGE | 03/15/02 5 COPIES | 0.25 | 9.61 | 0.25 | 0.00 | |
| 03/15/2002 | POSTCHARE | 03/15/02 | -3.06 | 9.61 | 0.00 | 0.00 | |
| 03/14/2002 | POSTCHARE | 03/14/02 | -0.68 | 12.67 | 0.00 | 0.00 | |
| 03/13/2002 | EPR | OID:100001403-ComisaryPur | -15.70 | 13.35 | 0.00 | 0.00 | |
| 03/13/2002 | POSTCHARE | 03/13/02 | -0.34 | 29.05 | 0.00 | 0.00 | |
| 03/08/2002 | PHONECARD | 03/08/02 | -30.00 | 29.39 | 0.00 | 0.00 | |
| 03/07/2002 | <MISCCHRGE> | 03/07/02 (4 MANILLA ENVEL | -0.60 | 59.39 | 0.00 | 0.00 | |
| 03/07/2002 | MISCCHRGE | 03/07/02 (4 MANILLA ENVEL | 0.60 | 59.99 | 0.60 | 0.00 | |
| 03/06/2002 | <COPYGHRGE> | 03/05/02 (8 COPIES) | -0.40 | 59.99 | 0.00 | 0.00 | |
| 03/06/2002 | COPYGHRGE | 03/05/02 (8 COPIES) | 0.40 | 60.39 | 0.40 | 0.00 | |
| 03/06/2002 | <COPYGHRGE> | 03/04/02 (12 COPIES) | -0.60 | 60.39 | 0.00 | 0.00 | |
| 03/06/2002 | COPYGHRGE | 03/04/02 (12 COPIES) | 0.60 | 60.99 | 0.60 | 0.00 | |
| 03/06/2002 | EPR | OID:100001277-ComisaryPur | -19.95 | 60.99 | 0.00 | 0.00 | |
| 03/06/2002 | POSTCHARE | 03/06/02 | -2.72 | 80.94 | 0.00 | 0.00 | |
| 03/05/2002 | POSTCHARE | 03/05/02 | -0.68 | 83.66 | 0.00 | 0.00 | |
| 03/04/2002 | PHONECARD | 03/04/02 | -30.00 | 84.34 | 0.00 | 0.00 | |
| 03/01/2002 | POSTCHARE | 03/01/02 | -0.68 | 114.34 | 0.00 | 0.00 | |
| 02/28/2002 | <COPYGHRGE> | 02/26/02 (42 COPIES) | -2.10 | 115.02 | 0.00 | 0.00 | |
| 02/28/2002 | COPYGHRGE | 02/26/02 (42 COPIES) | 2.10 | 117.12 | 2.10 | 0.00 | |
| 02/27/2002 | <MISCCHRGE> | 02/27/02 (6 MANILLA ENVEL | -0.90 | 117.12 | 0.00 | 0.00 | |
| 02/27/2002 | MISCCHRGE | 02/27/02 6 MANILLA ENVEL | 0.90 | 118.02 | 0.90 | 0.00 | |
| 02/27/2002 | EPR | OID:100001208-ComisaryPur | -19.20 | 118.02 | 0.00 | 0.00 | |
| 02/27/2002 | POSTCHARE | 02/27/02 | -1.92 | 137.22 | 0.00 | 0.00 | |
| 02/26/2002 | POSTCHARE | 02/26/02 | -0.34 | 139.14 | 0.00 | 0.00 | |
| 02/25/2002 | POSTCHARE | 02/25/02 | -1.36 | 139.48 | 0.00 | 0.00 | |
| 02/22/2002 | PHONECARD | 02/22/02 | -20.00 | 140.84 | 0.00 | 0.00 | |
| 02/22/2002 | <COPYGHRGE> | 02/22/02 (16 COPIES) | -0.80 | 160.84 | 0.00 | 0.00 | |
| 02/22/2002 | COPYGHRGE | 02/22/02 (16 COPIES) | 0.80 | 161.64 | 0.80 | 0.00 | |
| 02/22/2002 | <MISCCHRGE> | 02/19/02 (20 COPIES) | -1.00 | 161.64 | 0.00 | 0.00 | |
| 02/22/2002 | MISCCHRGE | 02/19/02 (20 COPIES) | 1.00 | 162.64 | 1.00 | 0.00 | |
| 02/22/2002 | <MISCCHRGE> | 02/18/02 (22 COPIES) | -1.10 | 162.64 | 0.00 | 0.00 | |
| 02/22/2002 | MISCCHRGE | 02/18/02 (22 COPIES) | 1.10 | 163.74 | 1.10 | 0.00 | |
| 02/22/2002 | <MISCCHRGE> | 02/15/02 (3 COPIES) | -0.15 | 163.74 | 0.00 | 0.00 | |
| 02/22/2002 | MISCCHRGE | 02/15/02 (3 COPIES) | 0.15 | 163.89 | 0.15 | 0.00 | |
| 02/21/2002 | DEPMO | 02/21/02 BERNARD | 100.00 | 163.89 | 0.00 | 0.00 | |
| 02/20/2002 | POSTCHARE | 02/20/02 | -0.01 | 63.89 | 0.00 | 0.00 | |
| 02/20/2002 | <MISCCHRGE> | 02/20/02 (2 ENVELOPES) | -0.18 | 63.90 | 0.00 | 0.00 | |
| 02/20/2002 | MISCCHRGE | 02/20/02 (2 ENVELOPES) | 0.18 | 64.08 | 0.18 | 0.00 | |
| 02/20/2002 | POSTCHARE | 02/20/02  (2 STAMPS) | -0.68 | 64.08 | 0.00 | 0.00 | |
| 02/20/2002 | EPR | OID:100001163-ComisaryPur | -19.75 | 64.76 | 0.00 | 0.00 | |
| 02/20/2002 | POSTCHARE | 02/20/02 | -1.02 | 84.51 | 0.00 | 0.00 | |
| 02/20/2002 | POSTCHARE | 02/20/02 | -2.04 | 85.53 | 0.00 | 0.00 | |
| 02/19/2002 | POSTCHARE | 02/19/02 | -1.02 | 87.57 | 0.00 | 0.00 | |
| 02/19/2002 | POSTCHARE | 02/19/02 | -0.34 | 88.59 | 0.00 | 0.00 | |
| 02/15/2002 | <COPYGHRGE> | 02/14/02 (3 COPIES) | -0.15 | 88.93 | 0.00 | 0.00 | |
| 02/15/2002 | COPYGHRGE | 02/14/02 (3 COPIES) | 0.15 | 89.08 | 0.15 | 0.00 | |
| 02/15/2002 | <COPYGHRGE> | 02/13/02 (21 COPIES) | -1.05 | 89.08 | 0.00 | 0.00 | |
| 02/15/2002 | COPYGHRGE | 02/13/02 (21 COPIES) | 1.05 | 90.13 | 1.05 | 0.00 | |
| 02/15/2002 | PHONECARD | 02/15/02 | -30.00 | 90.13 | 0.00 | 0.00 | |
| 02/13/2002 | <MISCCHRGE> | 02/13/04 (4 MANILLA ENVEL | -0.60 | 120.13 | 0.00 | 0.00 | |
| 02/13/2002 | MISCCHRGE | 02/13/04 (4 MANILLA ENVEL | 0.60 | 120.73 | 0.60 | 0.00 | |
| 02/13/2002 | EPR | OID:100001086-ComisaryPur | -20.00 | 120.73 | 0.00 | 0.00 | |
| 02/13/2002 | POSTCHARE | 02/13/02 | -0.34 | 140.73 | 0.00 | 0.00 | |
| 02/11/2002 | POSTCHARE | 02/11/02 | -0.68 | 141.07 | 0.00 | 0.00 | |
| 02/08/2002 | DEPCK | INITIAL DEPOSIT | 141.75 | 141.75 | 0.00 | 0.00 | |

----------------------------------------------------------------------------------------



ATTN: JACK PARKS (INS).

Ramos
A70 530 620
FOR YOUR INFO

Name: Oluwashina Ahmed        Cell: A pod
05/14/02        11:58

Circle one of the following:

Medical   [Request]   Grievance   Attorney   Clergy/Minister

State nature of the request: According to your reply
05/13/02, you said that If I have the
appropriate papers address to the
Court, the proper numbers of Copies will
be made for me. However, I have to
reply to some mail that I receiv

Ahmed
Inmate Signature        Officer Signature        Time Rec'd

Date and Time Reviewed _____/_____/_____

Action Taken  5 copies (sheets) or less will
be copied for you here at Tri County.
More than 5 will be sent to Chicago
for copies to be made. All
mailings will be done out of
Chicago INS.

Copy to Tri County Administration.

Asst. Administrator     Administrator     Date and Time Rec'd
                        Parks

Co-Payment fees $15.00              to see Jail Doctor
Co-Payment fees $ 5.00              to see Jail Nurse

Yesterday. But today, Sgt Nelson said that
I cannot make any Copies or postage. Can
you explain to me why I cannot make any
Copies or postage        (4)        Thanks.

ATTN: ASST. ADMINISTRATOR

GRW/ Tri County Detention Center
Inmate Request Form

Inmate Name **Oluwashina Ahmed**     Unit **A Pod**
05/14/02

Circle one of the following

Medical    | Request |    Grievance    Attorney    Clergy/Minister

State nature of the request: I would like to know why I have been denied to make photo copies and postage. Said Sgt. Nelson in her own word. Kindly give me a full details as to why. Thanks

Ahmed

Inmate Signature          Officer Signature          Time Rec'd

Date and Time Reviewed ___/___/___

Action Taken _Spoke with you_



Asst. Administrator    Administrator    Date and Time Rec'd

Co-Payment fees: $15.00
Co-Payment fees: $ 5.00

to see Jail Doctor
to see Jail Nurse

(5)

ATTN: ADMINISTRATOR

GRW Tri County Detention Center
Inmate Request Form

Inmate Name Oluwashina Ahmed     Cell A Pod
05/14/02                    11:57am

Circle one of the following:

Medical    Request    Grievance    Attorney    Clergy/Minister

State nature of the request: According to Sgt. Nelson, "you cannot make any more copies or postage" So ordered by the administrator and Secretary, I would like to know why I am denied of copies and postage

Ahmed
Inmate Signature          Officer Signature          Time Rec'd

Date and Time Reviewed ___/___/___

Action Taken  spoke with you

Asst. Administrator     Administrator     Date and Time Rec'd

Co-Payment fees: $15.00          to see Jail Doctor
Co-Payment fees: $ 5.00          to see Jail Nurse

Your reply will be duely appreciated.

Thankss

(6)

ATTN: JACK PARKS (INS)

GRW Tri County Detention Center
Inmate Request Form

Inmate Name OluwaShina Ahmed    Cell A Pod

08/22/02 ?    2:20 pm

Circle one of the following

Medical    [Request]    Grievance    Attorney    Clergy/Minister

State nature of the request: I would like to know whe
I am denied copies again. The
papers are all legal documents,
that needed to be sent to
my lawyer. Allow me to make
the necessary copies that I nee

Ahmed

Inmate Signature          Officer Signature          Time Rec'd

Date and Time Reviewed____/____/____

Action Taken You weren't denied copies.
Copies of more than 5 sheets for
You will be made in Chicago District
Office and returned. Mail will be
Mailed out through the Chicago District
Office Mail Room.

Asst. Administrator    Administrator    Date and Time Rec'd

Co-Payment fees: $15.00          to see Jail Doctor
Co-Payment fees: $ 5.00          to see Jail Nurse


Parks
5/21/02
10:55 AM

(7)

ATTN: JACK PARKS

GRW Tri County Detention Center
Inmate Request Form

Inmate Name: Oluwagbemiga Ahmed        Cell #: A pod

04/11/02
05

Circle one of the following

Medical   [Request]   Grievance   Attorney   Clergy/Minister

State nature of the request: As per discussion with the
Captain on friday, (04/05/02) he said you will be
here on Saturday to talk to me about
making copies. I was dissapointed that
you did not make any effort to see me
and address the issue that the

Ahmed              A.              1740
Inmate Signature    Officer Signature    Time Rec'd

Date and Time Reviewed ___/___/___

Action Taken: When you have the proper
legal cover sheets ~~ready~~ for filing ~~with~~
a petition/application with the courts
or INS, the required number of copies
will be made.

Asst. Administrator    Administrator    Date and Time Rec'd

Co-payment fees $15.00
Non-Payment fees $ 3.00

I had already addressed the issue with you on
Thursday. The Captain told you I would be in on
Saturday, not that I would be back to talk to
you Saturday.

Captain had said that you have instructed
them not to make any copies for me. I
would like to know why you are still
dying of making photocopies of legal mat-
Your reply in writing would be appreciat-

ATTN. JACK PARKS (INS)

Inmate Name: **Oluwashna Ahmed**          Cell: **A Pod**

Check one of the following:

Medical  [Request]  Grievance  Attorney  Clergy/Minister

State nature of the request: There is **no** 8 U.S.C
1251 in the library I guess
you have it at your disposal.
Or if the C.F.R Book is
available as a Substitution

                                          Thanks.

_Ahmed_
Inmate Signature          Officer Signature          Time Rec'd

Date and Time Reviewed ____/____/____

Action Taken: TITLE 8 USC 1251 (1-1251)
is missing from Library — I do NOT HAVE
ANY LAW BOOKS IN MY OFFICE, including
not having any CFRs. SOMEONE MIGHT
STILL HAVE CHECKED OUT — I HAVE

Asst. Administrator    Administrator    Date and Time Rec'd

REQUESTED ANOTHER COPY, BUT IT WILL

Co-Payment fees: $15.00                    to see Jail Doctor
Co-Payment fees: $5.00                     to see Jail Nurse

PROBABLY TAKE SOME TIME TO get IT.

I made a Copy of Section 1227 (WHICH
USED TO BE 1251) AND PUT IT IN THE
LIBRARY. I went to the Carbondale, Illinois
Library to make this copy. It is not to be
Removed from Tri Co. Library.

                                          (9)

EXB. D9

OFFICE OF THE DEAN
College of Arts and Sciences
33 Peachtree Center Avenue, Suite 741 GCB

P.O. Box 4038
Atlanta, GA 30302-4038

Phone: 404/651-2294
Fax: 404/651-1542

December 8, 2000



OLUWASHINA AHMED
1406 BROCKETT WAY
CLARKSON, GA 30021

Dear Mr. Ahmed,

The Office of Admissions has informed me that you have been admitted to Georgia State University and that you are interested in a program of study in the College of Arts and Sciences. As Dean, I offer you my congratulations and welcome you to our college.

As you may know, Georgia State is one of three comprehensive research universities in the University System of Georgia. We have excellent academic programs and a roster of new and continuing faculty members who are experts in their fields of research and in instruction. Moreover, we have established educational partnerships around the globe, most of which include student exchanges.

As you prepare to enter Georgia State University, I hope you will take the opportunity to visit our campus, talk with members of the faculty, and perhaps sit in on a class. One of our faculty members will call you to see what assistance we may provide. Additionally, I invite you to contact me via e-mail at **abdelal@gsu.edu** if I can help you in any way.

Qualified students are encouraged to apply for Presidential Assistantships and other programs to become more familiar with the many academic opportunities available at Georgia State. Information about these programs is online at **www.gsu.edu/casugrad**, or you can call the Office of Undergraduate Studies at 404-463-9707.

We look forward to seeing you at Georgia State. In the meantime, please accept my best wishes.

Sincerely,

Ahmed Abdelal
Dean

Georgia State University, a unit of the University System of Georgia, is an equal opportunity educational institution and is an equal opportunity/affirmative action employer.

1

EXB. D10



Georgia State
University

December 13, 2000

Oluwashina Ahmed
1406 Brockett Way
Clarkson, Ga. 30021

Dear Oluwashina:

The Dean of the College of Arts and Sciences has informed me that you have been accepted into the college with a declared major of film/video. Please accept my sincere congratulations and welcome to the Department of Communication, where you will find the only film/video program in the State of Georgia. The faculty and staff also look forward to welcoming you and are interested in providing you with any assistance you may need in planning your program of study in your major.

As a film major, you will have the opportunity to study with faculty members who have national and international reputations in documentary film production, film studies and screen writing. Outside of classes, the faculty works closely with students, advising them on appropriate internships and apprenticeships, and with career opportunities in the field.

Located in the heart of downtown Atlanta and in close proximity to numerous professional film and video production houses, such as Turner, Crawford and Image, the Department of Communication film/video program is uniquely situated to provide excellent opportunities to students seeking degrees in this field.

I look forward to seeing you in the department during spring quarter. If you need any assistance, you may call Carmela Pattillo, 404-651-2689, and she will set up an appointment for you with one of our film/video faculty.

Sincerely,

Carol Winkler

Carol Winkler, Chair
Department of Communication

Georgia State University, a unit of the University System of Georgia, is an equal opportunity educational institution and is an equal opportunity/affirmative action employer.

OFFICE OF ACADEMIC ASSISTANCE

University Plaza
Atlanta, GA 30303-3083
Phone:    404/651-3504
Fax:      404/651-3536



Georgia State
University   ANDREW YOUNG
            SCHOOL OF POLICY STUDIES

March 31, 2001

Oluwashina Ahmed
P.O. Box 1162
Red Oak, GA 30272

Dear Mr. Ahmed:

Thank you for stopping by our office today to declare your area of specialization and review your program. Since you plan to specialize in Local Government Management, your faculty advisor will be Dr. Harvey Newman. You may contact him at (404) 651-4596 to review your degree requirements. A copy of your current course evaluation form (PACE) is enclosed.

Please don't hesitate to call me if you have any other questions about your program.

Sincerely,

Wanda Cooley

Wanda Cooley
Assistant Director


cc:  Dr. Newman

Georgia State University, a unit of the University System of Georgia, is an equal opportunity educational institution and is an equal opportunity/affirmative action employer.

VISAS



FEDERAL REPUBLIC OF NIGERIA

PASSPORT

Type / Type    Country code / Code du pays    Passport No. / Passeport N°
P              NGA                             A0066216

Authority / Autorité
370

32

P<NGA...<<ALHAJI<OLUSEGUN<<ASHAKE<<<<<<<<<<00
A0066216<7NGA3903245F0406082<<<<<<<<<<<<<<<<

(4)

VISAS

A 0066216

VISAS

PROCESSED FOR I-551.
TEMPORARY EVIDENCE OF
LAWFUL ADMISSION FOR
PERMANENT RESIDENCE
VALID UNTIL 1-31-2003 .
EMPLOYMENT AUTHORIZED.

A47 124 786

Jan. 16 2000, SF, DV1

Never board AC

I-90 Filed 1-22-2002
INFOPASS #30

12

13

5

# Certificate of Marriage

### State of Tennessee, Hamilton County
### Office of W.F. (Bill) Knowles, County Clerk

*This is to certify that*

## Oluwashina Ahmed

*and*

## Rosetta Evette Johnson

were married by ___TOMMY DAVIS, MINISTER___

on the ___31ST___ day of ___MARCH___, ___2000___,

and the same appears in the records of my office, Book no. ___216___

Page no. ___801___ License no. ___20201___. Given under my

hand and the seal of my office at the Courthouse in Chattanooga, this

___31ST___ day of ___MARCH___ in the year of

our Lord, ___TWO THOUSAND___



___W.F. Knowles___
County Clerk

By ___La Vega Jones___
Deputy Clerk

# My Donation To "Feed The Children" U.S.A.

## Donation To "Feed The Children" (U.S.A.)

OLUWASHINA AHMED
MONIQUE C. AHMED
1406 BROCKETT WAY
CLARKSTON, GA 30021

64-22/610
28211

610

TAX DEDUCTIBLE ITEM → ☐ $

09/29/14

Feed The Children

Ten

BAL. FORD.

THIS PAYMENT

BALANCE

OTHER

BAL. FORD.

FIRST UNION

First Union National Bank
Atlanta, Georgia
24 Hour Information Service
1-800-733-4008, Atlanta Area 404-559-5300

Donation

⑈061000227⑈ ⑈080000305399 2⑈ 0610

NOT NEGOTIABLE

Donat


⑦

CONSULATE GENERAL OF NIGERIA
WELFARE DEPARTMENT
828 2ND AVENUE
NEW YORK, NY 10017

Dear Sir/Ma,

My name is Oluwashina Ahmed (a. mark Ayilla. I am a native of Togo, with Nigeria identitities. One of our family said that was born in Saudi—Arabia. Another memb of the family said that I was born in Republic of Benin. However, another family records reveals that I was born in Accra, Ghana.

The United States Immigration and Naturalization Services are trying to obtain travelling documents from your embassy to deport me to Nigeria, an exile, a coun in which I do not belong. Do not issue any documents in the name of Oluwashi Ahmed and Mark Ayilla.

As a matter of fact, I have a case pending at the United States Court of Appeals. is a violation of the International Law, to deport any foreigner to any country. To

1 of 2

(42)

the ~~contrary~~ contrary that they have a case pending in the Court of Law of that Country that is willing to depo them. Given, tiny travelling document to the Americans, will be in a violati of my human right to equal and fairness justice.

Your immediate attention to this matter will be duely appriciated.

Sincerely

M Ayilla

Oluwashina Ahmed
(a.k.a) Mark Ayil

CC: Consulate General of Nigeria
Oluwashina Ahmed (a.k.a)
Mark Ayilla.

43

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Michael W. Dobbins
        CLERK

Office of the Clerk

        Oluwashina Ahmed
        Tri-County Detention Center
        1026 Shawnee College Rd.
        Ullin, IL  62992

---

        Case Number:  1:02-cv-02713

        Title:  Ahmed v. Ashcroft

Assigned Judge: Honorable David H. Coar

MINUTE ORDER of 5/7/02 by Hon. David H. Coar: Status
hearing held and continued to 06/04/02 at 9:00 a.m.
Plaintiff's motion to proceed without prepayment of fees
[3-1], is granted. Mailed notice

This docket entry was made by the Clerk on May 9, 2002

ATTENTION:  This notice is being sent pursuant to Rule 77(d) of the
            Federal Rules of Civil Procedure or Rule 49(c) of the Federal
            Rules of Criminal Procedure.  It was generated by ICMS,
            the automated docketing system used to maintain the civil and
            criminal dockets of this District.  If a minute order or
            other document is enclosed, please refer to it for
            additional information.

For scheduled events, motion practices, recent opinions and other information,
visit our web site at www.ilnd.uscourts.gov

Check our web site for CourtWeb--a concise listing of rulings by judges.
Check for rulings on noticed motions.  Also, subscribe to CourtWatch--a free
service--to receive e-mail notification of CourtWeb postings.

To apply for a PACER account, call 1.800.676.6856



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2713 | **DATE** | 5/7/2002 |
| **CASE TITLE** | OLUWASHINA AHMED vs. JOHN ASCHROFT, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____.  Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 6/4/2002 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Plaintiff's Application to Proceed without prepayment of fees is Granted. Clerk's office directed to issue summons and complaint by U.S. Marshal.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| PAMF | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



## U.S. SUPREME COURT DECISIONS

# Fast-track deportation ruled illegal

## Convictions can't void immigrant's right to hearing

**By Henry Weinstein**
Los Angeles Times

In an important victory for immigrants' rights, the U.S. Supreme Court ruled Monday that the government may not deport resident immigrants who have been convicted of certain crimes without giving them a court hearing.

In the 5-4 decision, which could affect thousands of people, the court rejected the contention of the U.S. Immigration and Naturalization Service that two 1996 laws stripped federal courts of jurisdiction to consider legal issues raised by such deportation cases.

The Clinton administration, which brought the case to the Supreme Court last year, and the Bush administration had each argued the case.

The majority, led by Justice John Paul Stevens, said that if people who had pleaded guilty to certain crimes, including minor drug offenses, were denied any review of a pending deportation, it "would give rise to substantial constitutional questions."

"This decision is a ringing endorsement of the right of immigrants to judicial review and to have access to the courts to challenge a deportation order," said Lucas Guttentag, an Oakland attorney who heads the Immi-

## High court actions

KEY: ●Majority ●Minority

**IMMIGRATION**
Ruled that some immigrants convicted crimes can't be deport without a court hearin
5-4

**CAMPAIGN SPENDING**
Upheld limits on wha political parties can spend in coordinatio with a candidate's
5-4
campaign.

**INTERNET COPYRIGHT**
Held that copyright require media companies have freelancers' permissi
7-2
before posting their work onl

**ADVERTISING**
Ruled that mushroor producers cannot be forced to contribute
6-3
marketing campaign that benefits competitors eve though the ads are designed t benefit the entire industry.

**AFFIRMATIVE ACTION**
Refused to hear an appeal of a lower-court ruling that held affirmative action program fo colleges and universities in Te discriminated against whites.

**GUN CONTROL**
Turned aside a National Rifle Association challenge to a provision in the Brady law tha allows the FBI to retain information about gun buy

# IMMIGRANTS:
# Ruling gives protection on deportation

CONTINUED FROM PAGE 1

grants rights project of the American Civil Liberties Union and argued the case at the Supreme Court.

David Cole, a Georgetown University law professor and expert on immigration issues, said the ruling "is very significant because the right of judicial review underlies all other rights. If you can't go to court, you can't vindicate your other rights."

Monday's ruling in INS vs. St. Cyr was a setback for the Justice Department, which contended that the pair of laws—the Antiterrorism and Effective Death Penalty Act of 1996 and the Immigration Reform and Immigrant Responsibility Act of 1996—were designed to hasten the removal of immigrants who had been convicted of certain "aggravated felonies."

That is a large category of crimes for which the maximum sentence is less than 5 years, ranging from drug cases to fraud, theft and repeated drunken-driving offenses.

Both laws are complex, with overlapping and to some degree inconsistent provisions. The Clinton administration argued that their combined impact meant that no federal court had jurisdiction to consider the correctness of the administration's determination that deportation was automatic for a large category of legal immigrants with criminal records—no matter how or when their crimes had been adjudicated.

The court majority, however, rejected the Justice Department's contention that the 1996 laws could be applied retroactively, a significant issue because the government was attempting to deport many people who had pleaded guilty to crimes before 1996, when a less restrictive statute on deportation appeals was in effect.

## 'Severe retroactive effect'

Non-citizens who pleaded guilty before 1996 "almost certainly relied" on their right to a court review of a possible deportation in deciding whether to forgo their right to trial, Stevens wrote. The elimination of any possibility of relief from a deportation order "has an obnoxious and severe retroactive effect," Stevens added.

The majority said that stripping courts of their ability to hear claims in cases such as this would be a severe act and that Congress had not spoken with sufficient clarity to bar such review. Justices Anthony Kennedy, David Souter, Ruth Bader Ginsburg and Stephen Breyer joined in the majority opinion.

Writing for the minority, Justice Antonin Scalia issued a stinging dissent.

"The majority finds ambiguity in the utterly clear language of a statute that forbids the district court [and all other courts] to entertain the claims of aliens," such as Enrico St. Cyr, "who have been found deportable by reason of their criminal acts," Scalia wrote.

St. Cyr, a citizen of Haiti, was admitted to the United States as a lawful permanent resident in 1986. A decade later, in March 1996, St. Cyr pleaded guilty in a state court to a charge of selling a controlled substance in violation of Connecticut law, a conviction that made him deportable. Under federal laws in effect at the time, St. Cyr would have been eligible for a waiver of deportation at the discretion of then-U.S. Atty. Gen. Janet Reno.

But removal proceedings against him were not commenced until April 1997, after the two 1996 laws had taken effect. Justice Department attorneys maintained that under their interpretation of the new laws, St. Cyr no longer was eligible for a waiver of deportation.

St. Cyr filed a petition alleging that the 1996 restrictions did not apply to him because he pleaded guilty before the laws were enacted. A federal trial judge and the 2nd U.S. Circuit Court of Appeals agreed, and their position was upheld by Monday's ruling.

## Companion case

The court also decided a companion case, Calcano-Martinez vs. INS, in which the INS sought to deport three people who had pleaded guilty to drug offenses before 1996. The high court, in an identical 5-4 split, upheld a 2nd Circuit opinion that the defendants were entitled to a hearing in federal district court.

Representatives of the INS and its parent agency, the Justice Department, declined immediate comment, saying their attorneys still were reviewing the decisions.

The rulings were hailed by the potential deportees and several liberal civil rights organizations.

But attorney Paul Kamenar of the conservative Washington Legal Foundation blasted the rulings as "a perfect example of judicial activism run riot." Kamenar, whose organization filed a friend-of-the-court brief in the case, said, "The opinion reverses the reforms Congress enacted to expedite the deportation of criminals. This totally upsets the framework Congress instituted."

0months,CLOSED,JFK

## U.S. District Court
### Northern District of Georgia (Atlanta)
### CIVIL DOCKET FOR CASE #: 1:02-cv-00551-RLV
### Internal Use Only

Ahmed, et al v. Ashcroft
Assigned to: Judge Robert L. Vining, Jr
Demand: $0
Cause: 28:2241 Habeas Corpus:INS

Date Filed: 02/26/2002
Date Terminated: 07/09/2002
Jury Demand: None
Nature of Suit: 460 Deportation
Jurisdiction: U.S. Government
Defendant

**Petitioner**

**Oluwashina Ahmed**
*also known as*
Mark Ayilla

represented by **Oluwashina Ahmed**
A-70-530-620
Tri-County Detention Center
1026 Shawnee College Road
Ullin, IL 62992
PRO SE

V.

**Respondent**

**John Ashcroft**

represented by **Lisa D. Cooper**
U.S. Attorney's Office-ATL
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6249
Email: lisa.cooper@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/09/2002 | | Case terminated. (adg) (Entered: 07/10/2002) |
| 07/09/2002 | 19 | JUDGMENT ENTERED for respondent against petitioner. (cc) (adg) (Entered: 07/10/2002) |
| 07/09/2002 | 🔒 | (Court only) (adg) (Entered: 07/10/2002) |
| 07/09/2002 | 18 | ORDER by Judge Robert L. Vining Jr. ADOPTING [16-1] report & recommendation as the order of this court GRANTING [13-1] motion to dismiss petitioner's petition for writ of habeaus corpus, DENYING AS MOOT the [5-1] motion for appointment of counsel by Oluwashina Ahmed, |

| | | |
|---|---|---|
| | | DENYING AS MOOT the [6-1] motion to have petioner produced at all hearings by Oluwashina Ahmed, DENYING AS MOOT the [7-1] motion for preliminary injunction by Oluwashina Ahmed, DENYING AS MOOT the [8-1] motion to present supporting documents of petitioners claim of extreme hardship by Oluwashina Ahmed, DENYING AS MOOT the [10-1] motion for additional party of service by Oluwashina Ahmed and DENYING AS MOOT the [11-1] motion for respondent failure for adjustment of status by Oluwashina Ahmed. (cc) (adg) (Entered: 07/10/2002) |
| 07/01/2002 | 🔒 | (Court only) Terminate deadlines (cll) (Entered: 07/01/2002) |
| 06/24/2002 | | SUBMITTED to Judge Robert L. Vining Jr. on [16-1] report & recommendation (cll) (Entered: 06/24/2002) |
| 06/17/2002 | 17 | Addendum and supplemental petition by petitioner to [14-1] petitioner's original memorandum. (cll) (Entered: 06/18/2002) |
| 06/17/2002 | | Petitioner's copy of [16-1] report & recommendation returned as attemped not known. (cll) (Entered: 06/18/2002) |
| 06/04/2002 | | SUBMITTED to Mag Judge Janet F. King on [13-1] motion to dismiss petitioner's petition for writ of habeaus corpus (cll) Modified on 06/24/2002 (Entered: 06/04/2002) |
| 05/29/2002 | | Completed referral to Mag Judge Janet F. King (fmm) (Entered: 05/31/2002) |
| 05/29/2002 | | Terminated submissions. (fmm) (Entered: 05/31/2002) |
| 05/29/2002 | 🔒 | (Court only) (fmm) (Entered: 05/31/2002) |
| 05/29/2002 | 16 | FINAL REPORT AND RECOMMENDATION by Mag Judge Janet F. King RECOMMEND GRANTING [13-1] motion to dismiss petitioner's petition for writ of habeaus corpus by John Ashcroft, RECOMMEND DENYING AS MOOT [5-1] motion for appointment of counsel, [6-1] motion to have petioner produced at all hearings, [7-1] motion for preliminary injunction, [8-1] motion to present supporting documents of petitioners claim of extreme hardship, [10-1] motion for additional party of service, [11-1] motion for respondent failure for adjustment of status, GRANTING nunc pro tunc [9-1] motion to extend time for 20 days to respond to court's show cause order with order for service (Submission of RR due 6/19/02) (cc) (fmm) (Entered: 05/31/2002) |
| 05/28/2002 | 15 | Addendum and Supplemental Petition by petitioner to [10-1] motion for additional party of service (cll) (Entered: 05/29/2002) |
| 05/15/2002 | | SUBMITTED to Mag Judge Janet F. King on [9-1] motion to extend time for 20 days to respond to court's show cause order, [10-1] motion for additional party of service, [11-1] motion for respondent failure for adjustment of status, [4-1] order (file in chambers) (cll) (Entered: 05/15/2002) |
| 05/06/2002 | 14 | Memorandum by petitioner in support of [7-1] motion for preliminary injunction (cll) (Entered: 05/07/2002) |
| 05/03/2002 | 13 | MOTION by respondent to dismiss petitioner's petition for writ of habeaus |

| | | corpus with brief in support. (cll) (Entered: 05/06/2002) |
|---|---|---|
| 04/29/2002 | 12 | Response by petitioner in opposition to [9-1] motion to extend time for 20 days to respond to court's show cause order (cll) (Entered: 04/30/2002) |
| 04/29/2002 | | SUBMITTED to Mag Judge Janet F. King on [5-1] motion for appointment of counsel, [6-1] motion to have petioner produced at all hearings, [7-1] motion for preliminary injunction, [8-1] motion to present supporting documents of petitioners claim of extreme hardship (file in chambers) (cll) (Entered: 04/29/2002) |
| 04/17/2002 | 11 | MOTION by petitioner for respondent failure for adjustment of status (cll) (Entered: 04/18/2002) |
| 04/17/2002 | 10 | MOTION by petitioner for additional party of service (cll) (Entered: 04/18/2002) |
| 04/16/2002 | 9 | MOTION by respondent to extend time for 20 days to respond to court's show cause order with brief in support. (cll) (Entered: 04/17/2002) |
| 04/15/2002 | | Certified mail receipt green card returned re: as to respondent (cll) (Entered: 04/16/2002) |
| 04/08/2002 | 8 | MOTION by petitioner to present supporting documents of petitioners claim of extreme hardship with supporting documents. (cll) (Entered: 04/09/2002) |
| 04/01/2002 | 7 | MOTION by petitioner for preliminary injunction with brief in support. (aet) (Entered: 04/04/2002) |
| 04/01/2002 | 6 | MOTION by petitioner to have petioner produced at all hearings . (aet) (Entered: 04/04/2002) |
| 04/01/2002 | 5 | MOTION by petitioner for appointment of counsel . (aet) (Entered: 04/04/2002) |
| 03/21/2002 | | Certified mail receipt green card returned re: [4-1] order mailed to Attorney General. (aet) (Entered: 03/25/2002) |
| 03/19/2002 | | Certified mail receipt green card returned re: [4-1] order to US Atty. (aet) (Entered: 03/25/2002) |
| 03/13/2002 | 4 | ORDER by Mag Judge Janet F. King GRANTING [2-1] motion to proceed in forma pauperis, and DENYING [3-1] motion for appointment of counsel; IT IS ORDERED that the Clerk transmit a copy of the Petition and this Order by cert. mail to the respondent. (cc cert./rrr to U.S. Atty & Attygen and respondent) (kt) (Entered: 03/15/2002) |
| 03/01/2002 | | SUBMITTED to Mag Judge Janet F. King on [2-1] motion to proceed in forma pauperis and for frivolity determination (syh) (Entered: 03/01/2002) |
| 02/26/2002 | | CASE REFERRED to Mag Judge Janet F. King (Calendar sheets forwarded) (syh) (Entered: 03/01/2002) |
| 02/26/2002 | 3 | MOTION by petitioner for appointment of counsel (syh) (Entered: 03/01/2002) |

| 02/26/2002 | 2 | MOTION by petitioner to proceed in forma pauperis (syh) (Entered: 03/01/2002) |
| 02/26/2002 | 1 | PETITION FOR WRIT OF HABEAS CORPUS (syh) (Entered: 03/01/2002) |

0months,CLOSED,JFK

## U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:02-cv-01004-RLV
## Internal Use Only

| | |
|---|---|
| Ahmed, et al v. Melville | Date Filed: 04/16/2002 |
| Assigned to: Judge Robert L. Vining, Jr | Date Terminated: 08/23/2002 |
| Demand: $0 | Jury Demand: None |
| Cause: 28:1361pr Complaint for mandamus relief (prisoner) | Nature of Suit: 540 Mandamus & Other |
| | Jurisdiction: Federal Question |

**Petitioner**

**Oluwashina Ahmed**                    represented by    **Oluwashina Ahmed**
                                                          A-70-530-620
                                                          Tri-County Detention Center
                                                          1026 Shawnee College Road
                                                          Ullin, IL 62992
                                                          PRO SE

**Petitioner**

**Rosetta Evette Ahmed**                represented by    **Rosetta Evette Ahmed**
*TERMINATED: 05/13/2002*                                 1406 Brockett Way
                                                          Clarkston, GA 30021
                                                          PRO SE

V.

**Respondent**

**Dist. Dir. INS Rosemary L. Melville**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2002 | | CC copy of the [8-1] order & [9-1] judgment returned to sender as to petitioner (ck) (Entered: 09/11/2002) |
| 08/23/2002 | 🔒 9 | JUDGMENT ENTERED DISMISSING this action for plaintiff's failure to keep the Court informed of his current address. (cc) (ck) (Entered: 08/27/2002) |
| 08/23/2002 | | Case terminated. (ck) (Entered: 08/27/2002) |
| 08/23/2002 | 🔒 | (Court only) (ck) (Entered: 08/27/2002) |
| 08/23/2002 | | Terminated submissions. (ck) (Entered: 08/27/2002) |
| 08/23/2002 | 🔒 8 | ORDER by Judge Robert L. Vining Jr. ADOPTING [7-1] report & |

| | | |
|---|---|---|
| | | recommendation as the order of this court, DISMISSING [1-1] complaint, without prejudice, for plaintiff's failure to keep the Court informed of his current address. (cc) (ck) (Entered: 08/27/2002) |
| 08/16/2002 | | SUBMITTED to Judge Robert L. Vining Jr. on [7-1] report & recommendation (returned mail as to petitioner - petitioner deported) (ck) Modified on 08/16/2002 (Entered: 08/16/2002) |
| 08/15/2002 | | CC copy of [7-1] report & recommendation returned mail as to petitioner. Petitioner deported (ck) (Entered: 08/16/2002) |
| 07/31/2002 | 🔒 | (Court only) (kt) (Entered: 07/31/2002) |
| 07/30/2002 | 🔒 7 | FINAL REPORT AND RECOMMENDATION by Mag Judge Janet F. King RECOMMEND DENYING [1-1] complaint and DISMISSING without prejudice, with order for service ( Submission of RR due 8/16/02 ) (kt) (Entered: 07/31/2002) |
| 07/22/2002 | | SUBMITTED to Mag Judge Janet F. King on [5-1] order directing clerk to perfect service of petition and order on respondent by certified mail, with copy to U.S. Attorney, [5-2] order directing Rosemary L. Melville to show cause w/in 30 days why writ of mandamus should not be granted. (kt) (Entered: 07/22/2002) |
| 07/15/2002 | 🔒 6 | Response by respondent to [5-1] order directing clerk to perfect service of petition and order on respondent by certified mail, with copy to U.S. Attorney, [5-2] order directing Rosemary L. Melville to show cause w/in 30 days why writ of mandamus should not be granted. (kt) (Entered: 07/22/2002) |
| 06/24/2002 | | Petitioner's copy of [5-1] order directing clerk to perfect service of petition and order on respondent by certified mail, with copy to U.S. Attorney was returned by USPS stating no longer in custody. (cll) (Entered: 06/25/2002) |
| 06/12/2002 | 🔒 | (Court only) (fmm) (Entered: 06/12/2002) |
| 06/10/2002 | | Terminated submissions. (fmm) (Entered: 06/12/2002) |
| 06/10/2002 | 🔒 5 | ORDER by Mag Judge Janet F. King DENYING [4-1] motion for reconsideration of [3-1] order, directing clerk to perfect service of petition and order on respondent by certified mail, with copy to U.S. Attorney , directing Rosemary L. Melville to show cause w/in 30 days why writ of mandamus should not be granted , [5-1] order to be submitted on 7/15/02 (cc) (fmm) (Entered: 06/12/2002) |
| 06/06/2002 | | SUBMITTED to Mag Judge Janet F. King on [3-1] order (cll) (Entered: 06/06/2002) |
| 05/28/2002 | | Payment received $ 24 Receipt #: 489141 (cll) (Entered: 06/03/2002) |
| 05/28/2002 | 🔒 4 | MOTION by petitioner for reconsideration of [3-1] order with brief in support. (cll) Modified on 06/03/2002 (Entered: 05/31/2002) |
| 05/16/2002 | 🔒 | (Court only) (fmm) (Entered: 05/16/2002) |

| 05/13/2002 | 🔒 | (Court only) Terminate party Rosetta Evette Ahmed (fmm) (Entered: 06/12/2002) |
|---|---|---|
| 05/13/2002 | | Terminated submissions. (fmm) (Entered: 05/16/2002) |
| 05/13/2002 | | Completed referral to Mag Judge Janet F. King (fmm) (Entered: 05/16/2002) |
| 05/13/2002 | 🔒 3 | ORDER by Mag Judge Janet F. King DIRECTING the clerk to refile action as one brought pursuna to 28 USC 1361, GRANTING [2-1] affidavit to proceed ifp and directing plaintiff to pay initial partial filing fee of $24.00 w/in 30 day and to make monthly payments as funds are deposited into inmate account , The Warden or designee shall collect the monthly payments and remit to Clerk until $150.00 is paid in full. Clerk is DIRECTED to resubmit action to mag judge when pet's pays the initial partial filing fee or at the expiration of the time period. [3-1] order to be submitted on 6/20/02 (cc) (fmm) (Entered: 05/16/2002) |
| 04/29/2002 | | SUBMITTED to Mag Judge Janet F. King on [1-1] complaint and [2-1] affidavit for IFP and frivolity determination. (adg) (Entered: 04/29/2002) |
| 04/16/2002 | | CASE REFERRED to Mag Judge Janet F. King (Calendar sheets forwarded) (adg) (Entered: 04/29/2002) |
| 04/16/2002 | 🔒 2 | Affidavit to proceed IFP. (adg) (Entered: 04/29/2002) |
| 04/16/2002 | 🔒 1 | COMPLAINT FOR MANDAMUS filed. (adg) Modified on 05/16/2002 (Entered: 04/29/2002) |



## IN THE LAGOS STATE MINISTRY OF JUSTICE
## HOLDING AT SECRETARIAT ALAUSA, IKEJA LAGOS
## SWORN AFFIDAVIT

**I, OLUWASHINA AHMED AL-KHALIFA, M**ale, Muslim, African-American (U. S. Citizen), of 3, Robert Onadipe Street, Gbagada Phase I, Lagos State of Nigeria do hereby

make an Oath and say as follows:-

1. I am the above named person.
2. That my date of Birth is November 9th 1989.
3. That I am a destitute, facing Extreme Hardship, Social Hardship and Poverty since my unlawful Deportation from the United States of America via Canada to Nigeria in 2002.
4. That I am unemployed since July 2006 till date.
5. That I reside with my Mother Alhaja W. A. Ahmed in the family house at the above stated address.
6. That I only survive from contributions from family members, friends and other relative.
7. That I am so poor that I cannot pay for any application processing fee.
8. That in Nigeria, there is no unemployment claim nor compensation available for victim of Deportation. So I have no major source of Income.

3. That this sworn affidavit is now required for record and official purposes.
4. That I make this affidavit in good faith, conscientiously to believing the same to be true and correct by the virtue of Oath Law Cap. 01, Laws of Lagos State 2003.

*Ahmed*
.................................
DECLARANT

Sworn to at the Lagos State Ministry of Justice's

Registry, this......25th.......day of ...July.......2012.

BEFORE ME

COMMISSIONER FOR OATHS



**SWORN AFFIDAVIT TO RENOUNCE NIGERIA AS MY NATIVE COUNTRY**

I, OLUWASHINA AHMED AL-KHALIFA, Male, Muslim, Nigerian Citizens,
Of No. 5, Robert Onadipe Street, Gbagada Phase 1, Lagos State of Nigeria do hereby
declare an oath and say as follows:-

1.  That I am the above named person.
2.  That I have decided to Renounce Nigeria as my Native Country.
3.  That I am an Arabian Descendant of the Kingdom of Saudi Arabia.
4.  That I am African by Virtue of Ghana, Togo, Republic of Benin, Oyo, Benin and Awori
5.  That I am also a Native American, African American of the United States of America.
6.  That I am also an Afro-European by virtue of Constantinople, Greik, Turkey and United
    Kingdom.
7.  That I am a Citizen of the United Nation Organization.
8.  That I am a person of Multiple Nationalities and therefore wish to be referred to as a
    Stateless person under the United Nation Convention Relating to the Status of stateless
    person.
9.  That I refer to Article 15 of the Universal Declaration of Human Rights10
10. That I also refer to Article 13 of the Council Directives 2004/83/EC of 29 April, 2004.
11. That I refer to the Convention and Protocol Relating to the status of Refugees.
12. That this affidavit is now required for records and official purposes.
13. And that I make this solemn affidavit in good faith conscientiously believing
    the same to be true and correct virtue of Oath Law of Cap 01, Law of Lagos
    state of Nigeria, 2003.

DEPONENT

Sworn to at the Ministry of
Justice Registry, Alausa, Ikeja
This ........ day of ............ 2012.

BEFORE ME

COMMISSIONER FOR OATHS

②